**PICKETT et al. v. DALLAS TRUST & SAVINGS BANK. (No. 722.)**

Court of Civil Appeals of Texas. Waco.
Dec. 13, 1928.

Rehearing Denied Jan. 24, 1929.

STANFORD, J. Appellants, Mildred Pickett and son, Ray Pickett, sued appellee to cancel a vendor's lien note for $3,000 executed by W. A. Wilkerson and payable to Edward Pickett, now deceased, and by the said Edward Pickett and wife, appellant Mildred Pickett, transferred to appellee, and also to cancel two deeds of trust executed by Wilkerson to appellee, given to better secure said $3,000 vendor's lien note. Briefly stated, the facts out of which this controversy arose are as follows:

Edward Pickett and wife executed a warranty deed to W. A. Wilkerson on July 15, 1925, conveying to him their homestead for a recited cash consideration of $4,500 and one vendor's lien note executed by Wilkerson for $3,000, payable to the order of Edward Pickett. This note was assigned to appellee by Edward Pickett and wife. W. A. Wilkerson and wife executed to appellee a first and second deed of trust on said property to better secure certain notes given in lieu of and to extend said $3,000 vendor's lien note and interest notes. Later Edward Pickett died, and this suit was brought by Mrs. Mildred Pickett and her son, Ray Pickett, to cancel said notes and deeds of trust, alleging said sale to Wilkerson was a simulated transaction, not intended to convey title to the homestead, and that Wilkerson only assisted Pickett in procuring a loan on his homestead.

Appellee interposed a general demurrer, general denial, a plea of estoppel, and that it was an innocent purchaser of said note and lien for value without any notice of any vice or defect in either said note or lien, etc. The court submitted only one issue, to which the jury answered: "At the time of the execution of the deed from the plaintiffs, Mr. and Mrs. Pickett, to W. A. Wilkerson, and the execution of the note for $3000.00 by W. A. Wilkerson to Ed Pickett, it was not the intention of Mr. and Mrs. Pickett to establish their home in Cameron County, Texas." The court entered judgment for appellee, and appellants have duly appealed and present the record here for review.

■ Under their first proposition, appellants contend, that, since appellee has not challenged by assignment of error any of the findings of fact by the trial court, such findings are binding on appellee in this court. If this case had been tried before the court, without a jury, and the court had filed findings of fact as provided in article 2208, Revised Statutes, then the above proposition would be correct, but this case was tried to a jury, and in such cases there is no law requiring or authorizing the trial court to file findings of fact. It is not error for the court in cases tried to a jury to file findings of fact on issues not submitted nor requested to be submitted to the jury, and where such

W. L. Eason, of Waco, for appellants.
Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellee.

findings are in no way in conflict with the findings of the jury, but such findings have no binding effect upon either party or the appellate court, and may be wholly disregarded. Such findings are important only in so far as same may be helpful to the appellate court in determining the facts from the record. Crosby et al. v. Di Palma et al. (Tex. Civ. App.) 141 S. W. 321; Robinson v. Lynch Davidson & Co. (Tex. Civ. App.) 1 S.W.(2d) 677; Ward et al. v. Etier, 113 Tex. 83, 251 S. W. 1028.

Under other propositions appellants contend, in effect, that, since the property in question was the homestead of Pickett and family, and the deed by Pickett and wife to Wilkerson and the $3,000 vendor's lien note by Wilkerson to Pickett constituted only a pretended sale, and that M. L. Fannin was appellee's agent and had notice of such facts, that appellants were entitled to have the deeds of trust canceled. There is no question but that the making of the deed by Pickett and wife to Wilkerson and the taking of the $3,000 vendor's lien note executed by Wilkerson, which purported to be in part payment for the lot, was only a simulated transaction, for the purpose of getting a loan from appellee on the homestead of Pickett and wife. Ed Pickett and a Mr. Glass first inquired of M. L. Fannin if Pickett could get a loan on said property for $3,000. Mr. Fannin told them he would drive by and see the property. This he did, and reported to Pickett that the security was sufficient, and, in this second conversation in reference to a loan for Pickett, Fannin testified he learned said property was the homestead of Pickett and wife; whereupon Fannin proceeded no further, telling Pickett he could not mortgage his homestead. Pickett then suggested that he deed the property to his son, he being single, and let him mortgage it for the loan desired, but Mr. Fannin told him that would not help matters; that it would not do to deed it to his son or any member of his family; that he could not get a loan on it as long as it was owned or occupied by any member of his family. Some ten days or two weeks later Ed Pickett and W. A. Wilkerson appeared at Mr. Fannin's office and announced that the property had been sold by Pickett and wife to W. A. Wilkerson, and had a deed duly executed by Pickett and wife purporting to convey said property to Wilkerson for a cash consideration of $4,500 paid, but said parties explained to Mr. Fannin that the real consideration was $7,-000, and that, as the property would not be the homestead of Wilkerson, he wanted to borrow $3,000 from appellee and secure same by a deed of trust on the property. Mr. Fannin suggested that this deed be destroyed and another one executed, showing the real consideration; that he preferred to have the $3,000 note a vendor's lien note and not a

deed of trust only. This was agreed to, so such deed was destroyed, and Mr. Fannin wrote another, reciting the consideration as $4,500 cash paid and one vendor's lien note for $3,000, which note also was written by Mr. Fannin. Mr. Fannin then took the acknowledgment of Ed Pickett at his office to said deed, and went out to the Pickett home, which was on the property involved, and took Mrs. Pickett's acknowledgment to said deed. W. A. Wilkerson having signed the $3,000 note, Mr. Fannin took his application the same day to appellee for a loan to take up and extend said $3,000 vendor's lien note. Pickett and wife executed a transfer from themselves to appellee of said $3,000 vendor's lien note, which transfer was in the usual form and duly acknowledged by both Pickett and wife. W. A. Wilkerson and wife executed two deeds of trust to appellee to better secure three notes for the aggregate sum of $3,000, given in renewal and in extension of the $3,000 vendor's lien note retained in the deed from Pickett and wife to Wilkerson. The loan was closed and the $3,000 paid to Pickett by appellee for said note, August 28, 1925.

W. A. Wilkerson testified, in substance, that he was a friend of Mr. Pickett and that what he did was only to enable Pickett to get a loan on his homestead. This witness said that the agreement between them was that Pickett and wife would convey the property to him; he would get the loan and then reconvey it to them; that the purpose was to enable Mr. Pickett to get a loan from the Dallas Trust & Savings Bank. This witness further testified that he had written the Dallas Trust & Savings Bank in March, 1928, that he had sold the property to Edward Pickett, who had assumed the payment of the notes, but that he never did notify said company that he agreed with Mr. Pickett to take this deed for the sole purpose of obtaining a loan.

Mrs. Mildred Pickett, one of the appellants herein, testified that the property was the homestead of herself and husband at the date the application was made to appellee for a loan, and that they remained in the house for about a month after the deed to Wilkerson was signed, when they went to La Feria in South Texas, where they stayed from about August 15th to the last of November. From La Feria they went to Dallas, where Mr. Pickett died February 17, 1926, and about a month afterward she moved back into the property involved. She further testified that she knew that the deed executed by herself and her husband to Mr. Wilkerson was for the purpose of enabling Mr. Wilkerson to make a loan, to make it appear that Wilkerson owned the place so he could obtain a loan, because her husband told her so. She also testified that her husband received the $3,000. In her pleadings, appellant alleged,

in substance, that she and her husband deeded the property to Wilkerson, but said deed was not a conveyance and was not intended to pass title, but the purpose and intent of same was to create a lien on a homestead and to *make it appear* that such lien was a vendor's lien, and, in furtherance thereof, said Wilkerson executed to Pickett his note for $3,000 and in said deed it was recited that said note was a vendor's lien note; that said deed and note were executed as a matter of accommodation and for the purpose of consummating a loan with the defendant; that in pursuance of said agreement Pickett and wife assigned said $3,000 note to defendant, as shown by instrument dated August 18, 1925, etc.

We think there can be no question but that Ed Pickett, his wife, Mildred Pickett, and W. A. Wilkerson, knowing that appellee would not make the $3,000 loan to Pickett and wife on said property while it was their homestead, entered into an agreement to mislead and deceive appellee, and thereby induce it to make said loan for $3,000 on said property notwithstanding it was homestead property of the Picketts, and in pursuance of this agreement and design, on July 15, 1925, Pickett and wife executed a warranty deed, regular in every respect, purporting to convey said property to W. A. Wilkerson for the consideration of $4,500 cash paid, and one vendor's lien note executed by Wilkerson for $3,000. Wilkerson paid no part of the $4,500 recited as paid. A deed was written reconveying the property from Wilkerson to Pickett. This deed was dated the next day, July 16, 1925, but was not acknowledged nor filed for record until November 10, 1925, after the loan was closed and the $3,000 paid by appellee on August 28, 1925. All other instruments evidencing the transaction in question were filed for record before or about the time the loan was closed. The evidence shows further that Ed Pickett several times told Fannin and others that he was going to move to South Texas and establish his home there, and he was going to use the proceeds of the sale of the property here to improve his home there. The application for the loan made by Wilkerson to appellee states that the property was purchased from Pickett subject to a $3,000 vendor's lien note, and at the time of the application was occupied by Pickett, but he would vacate before the 1st of August, 1925, and that thereafter the property would be used as rental property. This application recited further that it was made for a loan of $3,000 to the Dallas Trust & Savings Bank of Dallas, for the purpose of taking up and extending the $3,000 vendor's lien note in order to pay all the consideration in cash, as he (the vendor) was moving to South Texas and required all his money to establish himself there. On or about August 1, 1925, Pickett and family did vacate the property and go to South Texas, and were there when the loan was closed and the money paid by appellee. While Pickett and wife were in South Texas and before the loan was closed, Mr. Fannin wrote appellee that Pickett and family had moved to South Texas and established their home there. Fannin testified that before the loan was closed he went to the property for the purpose of getting a disclaimer from whoever occupied it, and he found no one there, but the neighbors informed him the property had been rented, and the tenants had gone to West Texas to be gone some time. It developed, after the loan was closed and the money paid by appellee, that the tenant above referred to was a tenant of Pickett and wife.

■ We think the collusive, deceptive, and, in law, fraudulent scheme to mislead and deceive appellee, and thereby induce appellee to make a loan on the Pickett homestead, was very cleverly manipulated. Such deception was evidenced not only by what purported to be regular, valid, and legal recorded instruments, but by the acts, statements, and declarations of the parties. Fannin, as above stated, denied that he knew the true facts. Mrs. Pickett testified he did know the true facts and told her all along that it was a loan on her homestead. This issue, if material, should have been submitted to the jury; but we do not think, under the facts of this case, such issue was material. If Fannin's evidence is true, then he had no notice that Pickett and wife and W. A. Wilkerson were perpetrating a fraud upon appellee. If Mrs. Pickett's evidence is true, then Fannin was a party to the fraud practiced upon appellee, for Fannin testified that he was an old loan man and knew that a loan on a homestead could not be valid, and could not be made valid by a simulated sale, taking vendor's lien notes and selling such notes. Mr. Fannin wrote the deed from Pickett and wife to Wilkerson. He directed how the consideration should be stated. He took the acknowledgment of Pickett and wife to said deed. He wrote the $3,000 purported vendor's lien note. At the request of Pickett and Wilkerson, he took the application of Wilkerson to appellee to take up said purported $3,000 vendor's lien note and extend same. He knew this application stated that the loan was desired in order to pay all the consideration in cash, as he, the vendor, was moving to South Texas and required all his money to establish himself there. He sent said application to appellee. He received from appellee the transfer of the $3,000 note from Pickett and wife to appellee. He sent said transfer to Pickett and wife in South Texas, where they executed same and returned it to him. He had all papers, except the deed of reconveyance, recorded. He sent appellee the abstract showing deed from

Pickett and wife to Wilkerson, reciting $4,500 cash paid and one vendor's lien note for $3,000; also transfer from Pickett and wife to appellee of said note; also two deeds of trust to appellee by Wilkerson and wife to better secure said $3,000 and interest on same, all duly recorded. Mr. Fannin attended to the matter of closing said loan. Mr. Fannin testified that he had no knowledge of the fraudulent scheme of Pickett and wife and Wilkerson to deceive appellee and thereby induce appellee to make a loan on a homestead. If his evidence is true, as above stated, then appellee had no notice through Fannin that any part of said transaction was simulated, or other than bona fide transactions.

If Mr. Fannin's evidence is untrue, and if he did know of the deceptive and fraudulent scheme being perpetrated, he, in doing what he did, became a party thereto and he pro hac vice became the agent of the persons he collusively served. As said by our Supreme Court in Centennial Mut. Life Ass'n v. Parham, 80 Tex. 518, 16 S. W. 319: "The rule which charges the principal with what the agent knows is for the protection of innocent third persons, and not those who use the agent, to further their own frauds upon the principal." Centennial Mut. Life Ass'n v. Parham, supra; Scripture v. Scottish-American Mortgage Co., 20 Tex. Civ. App. 153, 49 S. W. 644 (writ denied), and authorities there cited; Curry v. Stone (Tex. Civ. App.) 92 S. W. 263; 2 C. J., p. 871, § 550.

We think further, as it appears from the pleadings of appellant Mildred Pickett and the uncontroverted testimony, she and her husband, knowing that they could not obtain a loan against the homestead, entered into a scheme, together with W. A. Wilkerson, to make it appear they had sold the property subject to a vendor's lien for $3,000, and that said Pickett and wife, acting in collusion with the said Wilkerson, having by all their acts and conduct, as above set out, misled and deceived appellee and induced appellee to purchase what they had made to appear to be a valid first vendor's lien note against the property in question, appellant is estopped to deny as against appellee, an innocent purchaser of said note, that the facts are as they made them to appear to be. Mildred Pickett, appellant here, testified: "I knew that the deed was for the purpose of enabling Mr. Wilkerson to make a loan, to make it appear that Wilkerson owned the place, so that he could obtain a loan, after my husband told me. * * * At the time I signed the deed I thought the purpose for which the deed was being made was to get a loan. I guess I knew I was conveying it to Wilkerson for the purpose of enabling him to get a loan."

The evidence is conclusive that appellant Mildred Pickett knew of and was a party to the collusive scheme of her husband, Ed Pickett, and W. A. Wilkerson to mislead and deceive appellee and thereby induce appellee to purchase what she then represented to be a valid vendor's lien note for $3,000, but which she now claims was worthless. We think she is effectually estopped from asserting now that the facts are other than what she then represented them to be. As said by our Supreme Court in Heidenheimer v. Stewart, 65 Tex. 321: "If the owners of the homestead simulate a transaction, in which a negotiable note would be secured by a valid and meritorious lien on the exempt estate, and their artifice succeeds in imposing upon an innocent party, they are estopped from denying the truth of their solemn statements, and cannot be permitted to prove that a lien [through] their acts declared to be valid, is void because their acts were false." See, also, Schwarz v. National Bank, 67 Tex. 217, 2 S. W. 865; Welborn v. Earle (Tex. Civ. App.) 268 S. W. 982; Graves v. Kinney et al., 95 Tex. 210, 66 S. W. 293; Love v. Breedlove, 75 Tex. 649, 13 S. W. 223; Sparks v. Texas Loan Agency (Tex.) 19 S. W. 256.

But appellants contend there is no evidence to show that Pickett and wife made representations to Brindley and Long, agents of appellee, that they had sold their homestead to Wilkerson, and taken a vendor's lien note for $3,000 in part payment therefor, and that appellant, therefore, was not estopped from showing the true nature of said transaction. In appellee's first amended original answer it alleged that Pickett and Wilkerson represented to the *defendant*, appellee here, and its agents Brindley and Long, that Wilkerson had purchased the property from Pickett and wife and had acquired the fee-simple title thereto, etc. The evidence conclusively shows Pickett and wife, and their agent, Wilkerson, did make such representations to *defendant*, appellee here, and it is immaterial if they were not made to the agents alleged. The appellants pleaded, and the deeds of trust showed, that they were given in renewal and extension of the $3,000 vendor's lien note. Pickett and wife and W. A. Wilkerson furnished abstract of title showing deed from Pickett and wife to Wilkerson, duly executed and recorded, reciting and describing fully the $4,500 alleged to be paid and the $3,000 vendor's lien note, also the transfer of said note to appellee by Pickett and wife, also the two deeds of trust by Wilkerson and wife to appellee. All of these instruments were recorded, and an abstract thereof or the originals furnished appellee before the loan was closed.

Appellants contend further, since the conveyance from Pickett and wife to Wilkerson, and the $3,000 vendor's lien note, etc., constituted only a pretended sale, and at the time said note was transferred to appellee the premises were occupied by Pickett's ten-

ants, and that no inquiry was made of the tenants in possession, it follows that appellee had notice that said deed and note were intended as a mortgage. Appellant Mrs. Mildred Pickett testified, in effect, that she and her husband were away from the property some eight or nine months, and that during this time the property was occupied by Mrs. Russell and family as their tenants. Accepting this evidence as true, it is clear that, at the time the $3,000 note was purchased by appellee, Pickett and wife were in possession of said property by their tenant, Mrs. Russell. In the case of Eylar v. Eylar, 60 Tex. 315, our Supreme Court said: "It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made."

After discussing our registration laws requiring all instruments affecting land titles to be recorded, the court holds that the only inquiry necessary to be made is to examine the deed records, and, when it is there found that the grantor has by deed solemnly declared the grantee to be the owner, it is not necessary to inquire of the grantor although still in possession, whether or not he had uttered the truth in his deed, whether or not his own declaration was false. By the deed in question, the Picketts, who now assert claims through a secret agreement, declared in the most solemn form that the property in question was the property of W. A. Wilkerson. They permitted that declaration to be placed on record for the very purpose of giving information to all persons as to the true ownership. If Pickett and wife had remained in possession in person, clearly, under the settled law of this state, no inquiry of them would have been necessary. They were in possession by a tenant, Russell. Why should the rule be different? Why should Russell's possession be notice to appellee that the deed from Pickett and wife to Wilkerson was simulated? The general rule is that one purchasing land is charged with notice of the rights of the one in possession. If this rule be applied, appellee could be charged only with notice that Russell was a tenant of Pickett and wife; in other words, that Pickett and wife were in possession, and, their deed to Wilkerson being of record, no inquiry of them was necessary. If appellee had inquired of Russell, all it could have learned was that Russell was a tenant of the Picketts. We think the question here involved is the same as if Pickett and wife had been in possession in person, and is controlled by the decision of our Supreme Court in Eylar v. Eylar, supra. See, also, Pondrum v. Gray (Tex. Com. App.) 298 S. W. 409; Chamberlain v. Trammell, 61 Tex. Civ. App. 650, 131 S. W. 229.

In the case of Chamberlain v. Trammell, supra, cited and relied upon by appellant, it was held that possession of tenants was notice of the rights of a prior vendor under whom the tenant held. This decision was affirmed by the Supreme Court in Moore v. Chamberlain, 109 Tex. 64, 195 S. W. 1135. But the facts in those cases were different from the facts in this case. In that case, Chamberlain sold the property to B. K. Carson, retaining a vendor's lien note for $1,500, which note was sold and assigned to Mrs. Moore. Afterward, by agreement of Chamberlain and Carson, the property was conveyed by Carson to Trammell and a $1,600 vendor's lien note retained, which note was given to Mrs. Moore in substitution of the $1,500 note. At the time of the exchange of notes, a deed of trust was taken from Trammell to secure same. The deed of trust was foreclosed and a suit brought to set the sale aside on the ground that the property was the homestead of Chamberlain. The validity of the lien was admitted, but it was held that the sale under the deed of trust was void, because Chamberlain was in possession of the land by tenant, and that this possession was sufficient to charge notice of Chamberlain's right. There was no deed of record from Chamberlain to Trammell, and no representation on his part that Trammell was the owner, and, Chamberlain being in possession of the premises, under the general rule that possession is notice of the rights of the party in possession, it would necessarily be incumbent upon the party taking a deed of trust on the property from Trammell to inquire of the rights in said property of Chamberlain; but, had there been a deed from Chamberlain to Trammell, declaring Trammell the owner, then the case would have been within the rule announced in Eylar v. Eylar. This distinction is sustained by the decision in Pondrum v. Gray, supra. The deed records showing that Pickett and wife had conveyed all their right, title, and interest in said property to W. A. Wilkerson, we do not think it was incumbent upon appellee to make further inquiry of either Pickett and wife or their tenant.

■ All of the evidence shows that appellee had no notice that the conveyance from Pickett and wife to Wilkerson and the execution of the $3,000 vendor's lien note was a simulated transaction, or that it was other than as it was made to appear to be, to wit, a bona fide transaction. All the evidence shows further that appellee purchased the $3,000 vendor's lien note for value and before maturity, and appellee is a bona fide holder of said note in due course for value. This being true, the note and lien are valid in appellee's hands, although void as between the parties to the transaction out of which it arose. Graves v. Kinney, 95 Tex. 210, 66 S. W. 293; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Wroten v. Davis (Tex. Civ. App.) 260 S. W. 331; Jiles v. Bank (Tex. Civ. App.) 257 S. W. 945; Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447.

We have carefully considered all of appellants' assignments, and, finding no reversible error, overrule same. The judgment of the trial court is affirmed.