PICKETT et al. v. DALLAS TRUST & SAVINGS BANK. (No. 1128—5402.)

Commission of Appeals of Texas, Section B. Feb. 12, 1930.

W. L. Eason, of Waco, for plaintiffs in error.

Cockrell, McBride, O'Donnell & Hamilton and Ralph Wood, all of Dallas, for defendant in error.

SHORT, P. J. This suit was filed in one of the district courts of McLennan county by the plaintiffs in error against the defendant in error. While the petition contained allegations usually to be found in an action of trespass to try title, in which the property involved is described as lot No. 8 in block No. 40 of the Provident addition to the city of Waco, its ultimate purpose was to secure a judgment removing from the property certain incumbrances, consisting of two deeds of trust and a vendor's lien note for $3,000, the note having been executed by W. A. Wilkerson, the grantee, in a conveyance by Edward Pickett, the deceased husband of the plaintiff in error and his wife, Mildred Pickett, in which conveyance was the usual recitation that the note had been executed and delivered as evidence of a part of the unpaid purchase money, apparently promised to be paid by Wilkerson to Pickett. The case was tried to a jury and upon a single finding of fact judgment was rendered that the plaintiffs in error take nothing by their suit against the defendant in error, and declaring valid the two deeds of trust, one of which was to secure ultimately the payment of the moneys represented by the $3,000 note executed by Wilkerson and wife. From this judgment the plaintiffs in error prosecuted an appeal to the Court of Civil Appeals of the Tenth District, and that court affirmed the judgment of the trial court. 13 S.W.(2d) 195.

The writ of error was granted in this case on the sixth assignment, which reads as follows: "The uncontradicted evidence shows that the property in controversy was the homestead of Edward Pickett and family at. the time of the transaction in question, and that the deed by Pickett and wife, and the $3,000 note by Wilkerson to Pickett, constituted only a pretended sale of the homestead, and the uncontradicted evidence further shows that M. L. Fannin was appellee's agent, and that he had notice of such facts; hence it shows that appellants are entitled to have the deeds of trust canceled." While there are 37 assignments of error in the application for the writ of error, all of which we have considered, we only find it necessary to discuss the sixth, quoted above, in view of the conclusion we have reached as to the law of the case, under the facts found by the Court of Civil Appeals.

The defendant in error, in addition to a general demurrer, plea of not guilty, and general denial, interposed the plea of estoppel, and also of innocent purchaser. No instruction was requested to be given the jury by the court, submitting either the defense of estoppel, or the defense of innocent purchaser; nor did the court submit these defenses. The legal effect of this failure to submit issues upon these two defenses, under the rule announced in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, and Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591, and in the authorities cited in those cases, was to place the defendant in error in the position of having waived them as affirmative defenses. It follows, therefore, that if these *defenses* were necessary, either separately or together, to constitute a legal bar to a recovery by the plaintiffs in error, under their allegations, the Court of Civil Appeals erred in affirming the judgment of the trial court. The failure to submit either one of these issues by the court, and the failure of the defendant in error to request their submission, leaves the record in the condition where it is only necessary to determine whether the plaintiffs in error, under their pleadings and testimony, were entitled to the relief sought.

The original petition alleged that the property described therein was used and *occupied* as a homestead, not only until the death of Edward Pickett, but since his death and that the plaintiffs in error continued to use and *occupy* it as such homestead and are now so occupying it. These allegations, upon the trial, were conclusively proven:

Following these allegations the plaintiffs in error further alleged:

"That the plaintiff, Mildred Pickett, and her husband, Edward Pickett, deeded the property above described to W. A. Wilkerson on or about July 15, 1925, which deed is of record in Book 362, page 517, of the McLennan County Deed Records, but said deed was not a conveyance and was not intended as a conveyance, and did not pass title, and was not intended to pass title, but the purpose and intent of the same was to create a lien on a homestead and to make it appear that such lien was a vendor's lien, and in furtherance thereof the said W. A. Wilkerson executed to Edward Pickett his note for $3,000, and in said deed it was recited that said note was a vendor's lien note, and that said deed further recited that $4,500 was paid in cash, but said payment was not in fact made,

and said recitation was not true, but that at the time said deed was made the said Wilkerson and the said Edward Pickett entered into an additional written agreement, whereby and by the terms of which it was recited that said deed and the note were executed as a matter of accommodation and for the. purpose of consummating a loan with the defendant, which said note was to be taken up and carried by the defendant, and that the time of payment was to be extended and in said agreement it was further provided that the said Wilkerson would reconvey said land to the said Edward Pickett. That in pursuance of said agreement the said Edward Pickett and wife assigned said $3,000 note to defendant, as is shown by instrument dated August 18, 1925, and recorded in Book 370, page 214, of the McLennan County Deed Records. That thereafter, the said W. A. Wilkerson and wife executed to the defendant two deeds of trust, dated August 13, 1925, and recorded in Book 162, page 662, and page 667, respectively, of the Deed of Trust Records of McLennan county, Texas, the said deeds of trust being given to secure the payment of notes executed in extension and in lieu of said $3,000 note, the said deeds of trust providing for a lien to secure said indebtedness on the land above described. That thereafter, and in pursuance of said agreement, the said W. A. Wilkerson reconveyed said land to Edward Pickett, as shown by deed dated July 16, 1925, and recorded in Book 370, page 684, of the McLennan County Deed Records. That some months after the execution of the deed last aforesaid the said Edward Pickett died, leaving the plaintiffs as his sole surviving heirs. That said deed, deeds of trust and said vendor's lien are null and void, because at the times they were created the premises above described was the homestead of the plaintiffs and Edward Pickett, as aforesaid."

The prayer in substance was for a judgment removing from the property the incumbrances created by the deeds of trust and the vendor's lien recited in the deed from Pickett and wife to Wilkerson. The plaintiff in error, Mildred Pickett, testified as follows: "I knew that the deed was for the purpose of enabling Mr. Wilkerson to make a loan, to make it appear that Wilkerson owned the place, so that he could obtain a loan, after my husband told me." The findings of fact material to the question under discussion by the Court of Civil Appeals are as follows:

"Ed. Pickett and a Mr. Glass first inquired of M. L. Fannin if Pickett could get a loan on said property for $3,000. Mr. Fannin told them he would drive by and see the property. This he did, and reported to Pickett that the security was sufficient, and in his second conversation with reference to a loan, Fannin testified that he learned said property was the homestead of Pickett and wife; whereupon Fannin proceeded no further, telling Pickett he could not mortgage his homestead. Pickett then suggested that he deed the property to his son, he being single, and let him mortgage it for the loan desired, but Mr. Fannin told him that would not help matters; that it would not do to deed it to his son or any member of his family; that he could not get a loan on it as long as it was owned or occupied by any member of his family. Some ten days or two weeks later Ed Pickett and W. A. Wilkerson appeared at Mr. Fannin's office and announced that the property has been sold by Pickett and wife to W. A. Wilkerson, and had a deed duly executed by Pickett and wife, purporting to convey said property to Wilkerson for a cash consideration of $4,500 paid, but said parties explained to Mr. Fannin that the real consideration was $7,000, and that as the property would not be the homestead of Wilkerson he wanted to borrow $3,000 from appellee and secure the same by deed of trust on the property. Mr. Fannin suggested that this deed be destroyed and another one executed showing the real consideration; that he preferred to have the $3,000 note a vendor's lien note and not a deed of trust only. This was agreed to and such deed was destroyed and Mr. Fannin wrote another one reciting the consideration as $4,500 cash paid and one vendor's lien note for $3,000, which note was also written by Mr. Fannin. Mr. Fannin then took the acknowledgment of the said Ed Pickett at his office to said deed and went out to the Pickett home, which was on the property involved, and took Mrs. Pickett's acknowledgment to said deed. W. A. Wilkerson having signed said $3,000 note, Mr. Fannin took his application the same day to appellee for a loan to take up and extend said $3,000 vendor's lien note. Pickett and wife executed a transfer from themselves to defendant in error of such $3,000 vendor's lien note, which transfer was in the usual form, and duly acknowledged by both Pickett and wife. * * * W. A. Wilkerson testified, in substance, that he was a friend of Mr. Pickett and that what he did was only to enable Pickett to get a loan on his homestead. This witness said that the agreement between them was that Pickett and wife would convey the property to him. He would get the loan and reconvey it to them. That the purpose was to enable Mr. Pickett to get a loan from the Dallas Trust & Savings Bank."

Only three witnesses testified orally, each of whom having been introduced by the plaintiffs in error. The $3,000 note was dated July 15, 1925, and was payable 60 days after date. This note was duly transferred to defendant in error by Edward Pickett and Mildred Pickett by an instrument dated August 18, 1925, the consideration being $3,000. The two deeds of trust executed in favor of the defendant in error by W. A. Wilkerson and Laura A. Wilkerson are dated August 13,

1925, the first being executed as security for the principal sum of the $3,000 note, payments of which were divided and extended, and the second to secure the payment of accrued interest, payable semi-annually. It thus appears that the defendant in error paid full value for the $3,000 note and acquired it before maturity. It also appears that the transaction, between Edward Pickett and his wife and W. A. Wilkerson, wherein the former conveyed to the latter the property described in the petition and wherein a vendor's lien was retained on the property to secure the payment of the $3,000 note was apparently a valid transaction.

Waiving the disputed issue whether the defendant in error, at the time it acquired ownership of the $3,000 note, had either actual or constructive notice that the transaction between Pickett and wife and Wilkerson was a simulated one, and that the property was the homestead of Pickett and wife, the facts found by the Court of Civil Appeals which are amply supported by the testimony, demonstrate that the defendant in error was a purchaser in due course of trade and before maturity of the $3,000 note, and became entitled in the absence of notice of the facts above mentioned to enforce the payment of the money mentioned in said note by judicial proceedings. Section 50 of article 16 of the Constitution protects from forced sale the homestead of a family for the payment of all debts except the purchase money, or a part thereof, the taxes due thereon and for work and material used for construction of improvements thereon. The note purchased by defendant in error on its face purported to have been executed for a part of the purchase money of the property in controversy.

All of the witnesses who testified orally upon the trial of the case were placed on the stand by the plaintiffs in error who thereby vouched for their credibility. When Pickett and wife executed, acknowledged, and delivered the transfer of the $3,000 note to defendant in error and received in exchange therefor $3,000 in cash they, in substance and effect, represented to the defendant in error that the transaction, of which the promissory note was a part, was what it purported to be. This act on the part of Pickett and wife, in transferring the note and accepting the money therefor, together with the recitations in their deed to Wilkerson, amounted to a declaration made to the defendant in error, that the note represented a genuine indebtedness due by Wilkerson to them, executed for a valuable consideration in a bona fide transaction.

In his application for a loan made by Wilkerson to the defendant in error Wilkerson states that he purchased the property on July 15, 1925, the date of the deed; that he paid $7,500 for it, of which $4,500 was in cash and the remainder, evidenced by the $3,000 note; that the then present value of the perishable improvements was $6,000 and of the ground, without the improvements $1,500; that the property was not occupied at that time by him, but was occupied by Edward Pickett, who would vacate it the 1st of August, if not sooner; that no part of this property was either the business or resident homestead of himself and was never his business or resident homestead; that he did not intend to make it either his business or residence homestead; that his residence homestead consisted of 300 acres of land; that there was a $3,000 note given by him and held by Edward Pickett, it being a vendor's lien note against the property; and that the purpose of the loan was to take up and extend said note in order to pay all the consideration in cash. There were other statements in the application, which were made under oath, from which no other conclusion could have been reached than that the indebtedness, evidenced by the $3,000 note was genuine and that Pickett, the holder thereof, was entitled to demand and receive payment, according to its terms.

Among other things, to which the witness Wilkerson testified orally, is the following: "I never did notify the Dallas Trust & Savings Bank that I had agreed with Pickett to take this deed for the sole purpose of obtaining a loan." This witness further testified: "Pickett knew that he could not get a loan on that property. He told me he wanted me to get it for him because I understood that line of business and he did not."

It clearly appears from the testimony in the case, and especially from the facts found by the Court of Civil Appeals that the purpose of Edward Pickett and wife, in securing the aid of Wilkerson, was well known to Wilkerson and that this purpose was to acquire $3,000 in cash by the sale of the $3,000 note to the defendant in error. Moreover, Wilkerson was introduced as a witness by the plaintiffs in error and his statements must be taken as true, in considering the effect of his testimony upon the rights of the plaintiffs in error. Heidenheimer v. Stewart, 65 Tex. 321; Sparks v. Texas Loan Agency (Tex. Sup.) 19 S.W. 256, 259; Webb v. Burney, 70 Tex. 326, 7 S.W. 841; Love v. Breedlove, 75 Tex. 652, 13 S.W. 222; Western Mortgage Co. v. Ganzer (C. C. A.) 63 F. 647, 650.

The Court of Civil Appeals says: "All of the evidence shows that appellee had no notice that the conveyance from Pickett and wife * * * and the execution of the $3,000 vendor's lien note was a simulated transaction, or that it was other than as it was made to appear to be, to wit, a bona fide transaction." This statement of fact by the Court of Civil Appeals is challenged in the sixth assignment of error. Accepting as correct this statement of fact, made by the Court of Civil Appeals on the particular subject as being correct, un-

der all the authorities, some of which are mentioned by the Court of Civil Appeals in its opinion, it is said: "The note and lien are valid in appellee's hands, although void as between the parties to the transaction out of which it arose."

One of the witnesses introduced by the plaintiffs in error was M. L. Fannin. According to his testimony this witness acted as a broker in the transaction, resulting in the furnishing to Pickett by defendant in error of the $3,000. If the defendant in error had any legal notice of the facts alleged in the petition of the plaintiffs in error, that notice was acquired through the witness Fannin. There is testimony in the record tending to show that Fannin did not act in good faith and on account of this testimony the Court of Civil Appeals concluded that the defendant in error had no notice that the transaction was a simulated one, correctly holding that, if Fannin was not acting in good faith with his principal, the principal was not bound by his knowledge of the facts for the reason that Fannin thereby became a party to the fraud and the agent of the persons he collusively served. Centennial Mutual Life Ins. Association v. Parham, 80 Tex. 518, 16 S. W. 316, 319.

But the record does not support the finding of fact by the Court of Civil Appeals to the effect that all the evidence shows that defendant in error had no notice that the conveyance of Pickett and wife to Wilkerson and the execution of the $3,000 vendor's lien note was a simulated transaction. While the plaintiffs in error did not, in their original petition, expressly allege that the defendant in error had notice of these matters they did make this allegation in the supplemental petition. Moreover, it appears that the defendant in error did have notice of these transactions, provided the knowledge of the witness Fannin was imputed to the defendant in error, but Fannin testified to the contrary, stating that he had not such notice, while there is other testimony in the case indicating he had such notice, therefore the testimony on this issue was conflicting and presented an issue of fact which should have been submitted to the jury. Recognizing this situation the plaintiffs in error requested the court to submit to the jury the following issue: "Was M. L. Fannin the agent of the defendant in the transactions involved in the suit?" This was refused to which the plaintiffs in error excepted. They also requested the court to submit to the jury this issue: "Did M. L. Fannin know at the time the $3,000 note was assigned to defendant that the deed to W. A. Wilkerson and the note by W. A. Wilkerson were executed for the purpose of fixing a lien on the Pickett homestead?" This was also refused to which the plaintiffs in error excepted.

In their motion for new trial the plaintiffs in error assigned as error this action of the court in refusing to submit these two issues. We think both these issues, under the testimony, should have been submitted. If Fannin was the agent of the defendant in error and knew the purpose of the deed to Wilkerson and his note for $3,000 then the trial court would have been compelled to have entered a judgment declaring invalid the lien attempted to be fixed on the homestead to secure the payment of this note, whereas, if Fannin was not acting as the agent of the defendant in error and did not know these facts, or was in ignorance of any facts which would have put upon inquiry a man of reasonable prudence, then under the other facts in the case, the plaintiffs in error would not be entitled to a judgment annulling the apparent lien upon their homestead by the transaction involving the $3,000 note.

The obligation of W. A. Wilkerson primarily is to pay the monies he promised to pay by the execution of this note. He is not a party to this suit, the purpose of which is merely to secure a judgment releasing the homestead from this apparent lien. At most the homestead is but a surety for the payment of the note. The owners of the homestead are not liable personally for the payment of any part of it. No payment of the note in this suit is sought, nor, indeed, could it be sought, so long as Wilkerson is not a party. It may be that no necessity will ever exist to resort to the security for the payment of the note since Wilkerson, being primarily liable, the law will compel the defendant in error to exhaust its remedy for collection of the monies due, out of property belonging to Wilkerson.

The plaintiff's cause of action, under the facts of this case, necessarily embraced an allegation that the defendant in error had notice that the transaction was a simulated one. This allegation was supported by some of the testimony introduced by the plaintiff in error, but there was other testimony elicited from the witnesses introduced by the plaintiff in error contradicting that part of the testimony tending to show that defendant in error had notice that the transaction was a simulated one. The plaintiff in error properly and duly sought to have this issue thus presented to be submitted to the jury, and the court refused to submit the issue in any form. It is true that, had the court submitted the issues requested, it would have been under the necessity to have instructed the jury to the effect that if Fannin, knowing the fraudulent design of Pickett and wife and of Wilkerson, aided them in deceiving the defendant in error and thereby procured the delivery to Wilkerson and through him to Pickett of the $3,000 paid for the note, then under such circumstances the knowledge of Fannin would

not be imputed to the defendant in error, since the record discloses that the defendant in error did not have any notice that the transaction was a simulated one, unless the knowledge of Fannin was imputable to it. Because of the failure of the court to submit these two issues we think the judgments of the Court of Civil Appeals and of the district court should be reversed and the case remanded.

The other assignments of error, which do not relate to, or embrace, the question of notice, or want of notice, by the defendant in error, growing out of the acts of the witness Fannin, with relation to the conveyance by Pickett and wife to Wilkerson, the execution of the note by Wilkerson, and the application of Wilkerson to the defendant in error for a loan to take up the note and kindred matters, having been properly disposed of in the opinion of the Court of Civil Appeals they should be overruled.

For the errors discussed, committed by the trial court, of which the Court of Civil Appeals approved, we recommend that the judgments of both courts be reversed and the cause remanded for another trial.

CURETON, C. J. Judgments of the District Court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals. We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.