## DALLAS TRUST & SAVINGS BANK v. PICKETT et al.

### No. 1294.

Court of Civil Appeals of Texas. Waco.
April 6, 1933.

Rehearing Denied May 11, 1933.

Pickett; that they afterwards assigned said note to the loan company; that Wilkerson executed and delivered to the loan company new notes and a deed of trust on said property to secure the payment of the money so advanced by the loan company to take up said notes. They alleged that the transaction was a fictitious or simulated one for the purpose of placing a lien upon the homestead and that the loan company had notice thereof and that by reason thereof the purported lien was void. The loan company answered by general demurrer and general denial and pleaded that it was a good-faith purchaser for value of said note and lien, without notice, and that the plaintiffs were estopped to plead that said transaction was a simulated one.

Briefly stated, the facts are as follows: On July 15, 1925, Edward Pickett and W. A. Wilkerson went to the office of M. L. Fannin, appellant's agent in the city of Waco, and stated to him that Pickett and wife had sold the property in question to Wilkerson and that Wilkerson desired to secure a loan on the property for the purpose of paying the balance of the purchase price to the Picketts. They exhibited to said agent a deed to the property from Pickett and wife to Wilkerson, but as the deed was not in the form desired by the agent, a new deed was prepared by which Pickett and wife conveyed the property to Wilkerson for a recited consideration of $4,500 cash and one vendor's lien note in the sum of $3,000 payable to Edward Pickett sixty days after date. Said agent, M. L. Fannin, took the acknowledgment of Pickett and wife to the deed. At that time Mr. Pickett stated to the agent that he had bought a place at Laferria, Tex., and was going to move to it. Wilkerson immediately made written application to the loan company for a loan of $3,000 with which to take up the Pickett note. Shortly thereafter Wilkerson executed and delivered to Pickett a deed reconveying the property to him and agreed that he had accepted title to the property merely for the purpose of aiding Pickett in putting a loan on the property. The deed of reconveyance, however, was not recorded until long after the loan was closed. The loan was accepted by the loan company at its home office in Dallas, and on August 13, 1925, Wilkerson and wife executed and delivered to the loan company a deed of trust on the property to secure new notes given for money advanced by the loan company to take up the Pickett note. On August 18, 1925, Pickett and wife by written assignment duly acknowledged, sold, and assigned to the loan company the $3,000 note executed to them by Wilkerson, and on August 28, 1925, the loan company paid to Pickett the face value of said $3,000 note. At the time the loan company paid the mon-

McBride, O'Donnell & Hamilton, of Dallas, for appellant.

W. L. Eason, of Waco, for appellees.

ALEXANDER, Justice.

This action was brought by Mildred Pickett and her son, Ray Pickett, in trespass to try title to recover from the loan company a house and lot in the city of Waco. In the alternative the plaintiffs sought to cancel certain notes and a deed of trust on the property executed by W. A. Wilkerson to the loan company. The real purpose of the suit was to cancel the notes and deed of trust. The plaintiffs alleged that in July, 1925, Mildred Pickett and Edward Pickett, the latter now deceased, were husband and wife and used and occupied the property as a homestead; that Edward Pickett desired to borrow money and that he and his wife executed and delivered to W. A. Wilkerson a deed to said property and retained a vendor's lien note in the sum of $3,000 payable to Edward

ey to Pickett, he and his wife had moved to Laferria and were living on the property which they had contracted to purchase at that place. At that time the Waco property was being occupied by a Mr. Russell as a tenant of the Picketts. Wilkerson in his application represented that the property was occupied by his tenant. Fannin, the agent of the loan company, visited the premises for the purpose of interviewing the tenant, but finding him away from home, reported to the loan company that the tenant was occupying the property as a tenant of Wilkerson. Pickett was unable to pay for the Laferria property and was compelled to give it up. He and his wife later moved to Dallas, where he died. Mrs. Pickett, joined by her son, brought this suit. Mrs. Pickett testified that at the time they moved to Laferria they went there on account of the health of their son and that they never intended to abandon their homestead in the property in question at Waco. A more complete statement of the facts will be found in the report of the case on a former appeal. See (Tex. Civ. App.) 13 S.W.(2d) 195; Id. (Tex. Com. App.) 24 S.W.(2d) 354.

The case was tried before a jury, and upon the verdict of the jury, the trial court entered judgment for plaintiffs canceling the notes and deed of trust. The loan company appealed.

The jury found that the property in question was the homestead of Pickett and wife; that the sale from Pickett and wife to Wilkerson was a pretended one for the purpose of placing a loan on the homestead; that M. L. Fannin, who negotiated the loan, was the agent of the loan company, but that he did not have notice that the deed from Pickett and wife to Wilkerson and the note given in consideration therefor were executed for the purpose of fixing a lien on Pickett's homestead; and that the loan company was caused to make the loan on the faith of the deed from Pickett and wife to Wilkerson. The jury further found that at the time the loan was consummated the property was occupied by a tenant of Edward Pickett. Special issue No. 9, and the answer of the jury thereto, were as follows: "Did the defendant Dallas Bank & Trust Co. purchase from Edward Pickett the $3000.00 vendor's lien note retained in the deed from Edward Pickett and wife, Mildred Pickett, to W. A. Wilkerson, dated July 15, 1925, before maturity and without any notice or knowledge that the conveyance to Wilkerson was a pretended one and not an actual sale?" To which the jury answered: "No."

The appellant contends: First, that there is no evidence to support the answer of the jury to special issue No. 9 and that we should reverse and render the judgment in favor of the appellant; and, second, if it be mis-

taken in this, it contends that the evidence was insufficient to support the verdict of the jury and that we should reverse and remand the case for a new trial. The evidence is undisputed that the loan company purchased the $3,000 note executed by Wilkerson to Pickett before maturity and for a full face value. The only question to be determined, therefore, is whether the loan company purchased the note without notice or knowledge that the conveyance from Pickett and wife to Wilkerson was a simulated one. The only representative of the company that participated in the transaction at Waco was M. L. Fannin. The jury found that he did not know or have notice that the sale was a simulated one. Therefore, the loan company could not have received notice through him. The only representatives of the loan company at the home office who handled the transaction for the company were L. S. Brindley, assistant secretary of the company and manager of the loan department, and A. A. Long, the attorney who examined the loan papers. Each of these witnesses denied any knowledge whatever that the sale was a fictitious one or that it was an attempt to place a loan upon the homestead. They testified that at the time the loan was closed they had before them and had examined the abstract of title, including the application for the loan, and the deed from Pickett and wife to Wilkerson, and that they would not have made the loan had they known that there was anything irregular about the transaction. Wilkerson in his application for the loan stated that he had purchased the property from Pickett and wife. Pickett was present when the application was signed and was familiar with its contents. He informed Mr. Fannin that he had sold the property to Wilkerson and that it was not his homestead. Wilkerson testified that Pickett came to him and requested him to assist him in securing a loan on the property and stated that he was not living on the property and that it was not his homestead. Wilkerson further testified that he did not inform the company that the transaction was anything other than an outright sale. There was evidence showing that Pickett knew that he could not borrow money on his homestead and that it was necessary for him to simulate a sale in order to borrow the money and that he knew that the loan company would not make the loan if it discovered that the sale to Wilkerson was a fictitious one. He undertook to do, in a secret and circuitous manner, that which he could not do directly. No witness testified to any fact or circumstance showing that the company could have had notice that the transaction was a simulated one other than the information received by Mr. Fannin and the further fact that the property, at the time the loan was closed, was in the possession of Pickett's tenant. In the face of this ev-

idence the jury found that the company had notice that the sale was a pretended one and not an actual sale.

■■ We are not prepared to hold that the evidence establishes as a matter of law that the company purchased the note without any notice that the sale was a fictitious one, and therefore do not feel at liberty to reverse the case and render judgment in the face of the verdict of the jury. It is true that the only employees of the company who handled the transaction at the home office testified positively that they had no notice or knowledge that the transaction was a simulated one; but it must be remembered that they were interested witnesses, one of them being an officer in the company. There are cases which hold that when the evidence of an interested witness is direct and positive on the point at issue and where there are no circumstances in the record tending to discredit or impeach his testimony, such testimony will justify the appellate court in reversing and rendering judgment. These cases are collated and referred to in Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276, par. 6. However, the general rule as followed by the Supreme Court is that where the witness is interested, his credibility and the weight to be given to his testimony is for the jury and that an appellate court cannot reverse and render judgment on his testimony alone. Goodrich v. Pandem Oil Corp. (Tex. Com. App.) 48 S.W.(2d) 606; Thraves v. Hooser (Tex. Com. App.) 44 S.W.(2d) 916, par. 4; Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447, par. 5; Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 307, 47 S. W. 971; Sigmond Rothchild Co. v. Moore (Tex. Com. App.) 37 S.W.(2d) 121; Stone v. City of Wylie (Tex. Com. App.) 34 S.W.(2d) 842, par. 6; Farm & Home Savings & Loan Ass'n v. Muhl (Tex. Civ. App.) 37 S.W.(2d) 316 (writ refused); Mitchell v. Federal Mortgage Company (Tex. Civ. App.) 45 S.W.(2d) 649; Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276, 279, and cases there cited. The evidence established, and the jury found, that the property was Pickett's homestead and that the sale was a fictitious one, made for the express purpose of putting a lien on the homestead. The lien, therefore, under our Constitution, article 16, § 50, was not merely voidable, but was absolutely void, unless the appellant succeeded in establishing its plea of estoppel under the rule as laid down in the case of Heidenheimer Bros. v. Stewart, 65 Tex. 321, or in proving that it purchased the note and lien without notice of the vice, as held in the case of Graves v. Kinney, 95 Tex. 210, 66 S. W. 293. See Texas Loan Agency v. Hunter, 13 Tex. Civ. App. 402, 35 S. W. 399, 402; Davis v. National Bond & Mortgage Corp. (Tex. Civ. App.) 45 S.W.(2d) 272, par. 12; Turner v. Cochran, 94 Tex. 480, 61 S. W. 923.

■ We are of the opinion, however, that the verdict of the jury in answer to special issue No. 9 is so contrary to the great preponderance of the evidence as to require a reversal of the case. We recognize the right of the jury to weigh the testimony, to pass on the credibility of the witnesses, and to determine such inferences as may legitimately be drawn therefrom and that an appellate court ought not to set aside a verdict where there is reasonable support therefor in the evidence; but where the evidence so clearly and overwhelmingly preponderates against the verdict of the jury as to make it clear that the verdict is wrong, we feel it our duty to set aside the verdict and grant a new trial. Toole v. Moore (Tex. Civ. App.) 203 S. W. 429, par. 4. The evidence in this case shows that the Picketts entered into a deliberate scheme with Wilkerson to so mislead the loan company as to cause it to place a loan upon the property. The loan company exercised great precaution to see that the title was regular in every respect and that the lien was valid. The only witnesses who attempted to testify with reference to the notice or knowledge possessed by the loan company, with the exception of the information given to Fannin, testified positively and unequivocally that they had no notice or knowledge that the sale from Pickett to Wilkerson was a simulated one.

■ The jury found that at the time the loan was consummated the property was occupied by a tenant of Mr. Pickett, and the appellees here contend that their possession through said tenant, as a matter of law, put the loan company upon notice of the homestead claim of the Picketts. The well-established rule is that a purchaser or mortgagee from a vendee whose vendor remains in possession is not, merely by virtue of such possession alone, charged with notice of a secret claim in such property by such prior vendor where the purchaser or mortgagee relies on a deed duly executed and delivered by such prior vendor. It is said that such purchaser or mortgagee has a right to rely upon such deed as a complete divestiture of title. Eylar v. Eylar, 60 Tex. 315; Guaranty Bond State Bank v. Kelley (Tex. Com. App.) 13 S.W.(2d) 69. The appellees concede the rule as laid down in the Eylar Case, but contend that the rule does not apply where such prior vendor is not in possession in person, but is in possession through a tenant. We are unwilling to hold that a prospective purchaser or mortgagee is charged, as a matter of law, with notice of a secret claim in the property by a prior vendor merely because such vendor's tenant is in possession thereof. The fact that the property was in the possession of Pickett's tenant could have no greater effect than to put the loan company upon inquiry, and charge it

with notice of such facts as would have been discovered by a reasonably prudent person under the circumstances. Brooker v. Wright (Tex. Civ. App.) 216 S. W. 196, par. 7. Whether or not a reasonable inquiry by the loan company would have disclosed that the Picketts were asserting a secret claim to the property is a question of fact and not a question of law. Gibson v. Morris (Tex. Civ. App.) 47 S.W.(2d) 648, par. 3 (writ refused). In the former opinion of this court, appellees' contention as here made was overruled. See Pickett v. Dallas Trust & Savings Bank (Tex. Civ. App.) 13 S.W.(2d) 195. The Supreme Court reversed the decision of this court, but apparently approved the holding of this court on the point here under consideration, by using the following language: "The other assignments of error, which do not relate to, or embrace, the question of notice, or want of notice, by the defendant in error, growing out of the acts of the witness Fannin, with relation to the conveyance by Pickett and wife to Wilkerson, the execution of the note by Wilkerson, and the application of Wilkerson to the defendant in error for a loan to take up the note and kindred matters, having been properly disposed of in the opinion of the Court of Civil Appeals they should be overruled." Pickett v. Dallas Trust & Savings Bank (Tex. Com. App.) 24 S.W.(2d) 354, 359.

■ The appellees cite in support of their contention Moore v. Chamberlain, 109 Tex. 64, 195 S. W. 1135, and Pondrum v. Gray (Tex. Com. App.) 1 S.W.(2d) 278. These cases do apparently support the contention here made by appellees, but when the facts of these cases are carefully analyzed it will be seen that they do not come within the rule as laid down in Eylar v. Eylar, and that the holding therein would have been the same had the prior vendor been in possession of the property in person and not by tenant. In Moore v. Chamberlain, supra, the Chamberlains, who were claiming a secret interest in the land, were remote grantors who had apparently parted with their title to the land approximately ten years prior to the purchase thereof by Moore, who claimed to have purchased without notice, yet the Chamberlains' tenants were still in possession of the land. In Pondrum v. Gray, supra, H. Lawson Gray, whose tenant was in possession of the land at the time McFadden acquired title thereto, was a remote grantor who had parted with his title approximately three years prior to the time when McFadden, who claimed to have purchased without notice, acquired his title thereto. Moreover, H. Lawson Gray was not claiming the property by virtue of a secret title retained at the time of his prior conveyance to Sam Lee Gray, but was claiming title by virtue of a subsequent unrecorded reconveyance to him by Sam Lee Gray. His claim of interest was not one inconsistent with, nor which should have been retained in, his prior conveyance. His interest was not such as could have been shown in his prior conveyance. See Bumpas v. Zachary (Tex. Civ. App.) 34 S. W. 672. The rule as laid down in the Eylar Case was applied in a case where the one claiming to be a purchaser without notice had purchased directly from the immediate vendee of the vendor who was in possession of the property, and was based on the theory that a subsequent purchaser has a right to presume that his vendor has allowed the prior vendor to remain in possession of the property for such a reasonable time as would be sufficient to enable him to remove from the premises. Cameron v. Romele, 53 Tex. 238, 243. Such presumption ought not to be indulged where a prior vendor or his tenant has remained in possession for a number of years, as was contended for in the cases relied on by appellees. Therefore, we are of the opinion that the rule laid down in those cases does not apply to the facts of this case.

■ In the case at bar, the deed from Pickett and wife to Wilkerson was dated July 15, 1925. The deed of trust from Wilkerson to the loan company was dated August 13, 1925. The loan company paid the proceeds of the loan to Pickett on August 28, 1925. It will be seen, therefore, that only a short interval of time elapsed from the time of the execution of the deed to the time the loan was closed. Moreover, after Pickett and wife had placed their tenant in possession, they appeared before appellant's agent and signed, acknowledged, and delivered to the loan company an assignment of the vendor's lien note which they had received from Wilkerson as a part of the purchase price of the land. In this assignment they acknowledged that they had conveyed the property to Wilkerson and recited a conveyance of the note and lien and all their right, title, and interest in the land to the loan company. This acknowledgment on their part amounted to a declaration to the loan company that the note represented a genuine indebtedness due by Wilkerson to them, as a part of the purchase price of the land, under a conveyance executed by them for a valuable consideration in a bona fide transaction. Pickett v. Dallas Trust & Savings Bank (Tex. Com. App.) 24 S.W.(2d) 354, at bottom page 357. There may be some difference in the effect to be given to the possession of property through a tenant by a prior vendor where the tenant was in possession at the time of the conveyance and simply remained in possession, and where the tenant has been placed in possession thereof after the execution and delivery of the deed; but in this case the Picketts executed the assignment of the vendor's lien note and thereby ratified their sale to Wilkerson after they had placed their tenant in possession. Their possession there-

fore through such tenant did not outweigh their solemn declaration contained in the assignment. Furthermore, at the time of the execution and delivery of the assignment, the Picketts were living at Laferria on other property owned by them and their mere possession of the Waco property through a tenant was not sufficient to put the loan company upon notice as a matter of law that they were still claiming the Waco property on which they did not then reside as their homestead. Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209.

Believing as we do that the verdict of the jury was contrary to the great weight of the evidence, we reverse the judgment of the trial court and remand the case for another trial.