R. M. SCRIPTURE ET AL. v. SCOTTISH-AMERICAN MORTGAGE COMPANY, LIMITED.

Decided December 17, 1898.

**1. Homestead—Practice—Verdict Properly Directed.**

A verdict was properly directed for plaintiff in an action by a mortgage company to foreclose a deed of trust in which the defense was that the general agent who made the loan knew that a portion of the land constituted the homestead of the mortgagors, where the agent, who had positive instructions to make no loan upon any property about which there was any question as to whether it was a homestead, knowing of facts indicating that the mortgagors intended to return and reoccupy the property as a homestead, required them to state under oath whether it was their homestead, and they swore that it was not, and that their homestead was in another county, consisting of lots specifically described, and the agent testified that he relied on the truth of their representations and negotiated the loan upon the faith of such statements.

**2. Agency—Fraud—Knowledge of Agent Not Notice.**

A mortgage company is not charged with its agent's secret knowledge that a property on which he made a loan was a homestead, where the loan was collusively made against the positive instructions of the company and without its knowledge.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*Robertson & Firmin* and *Harris, Etheridge & Knight,* for appellants.

*Gano, Gano & Gano,* for appellee.

FINLEY, CHIEF JUSTICE.—This cause grew out of two suits—one instituted by the Scottish-American Mortgage Company, Limited, against R. M. Scripture, F. E. Scripture, and James B. Simpson, on December 22, 1892, seeking a judgment upon a note for $5300, with interest, and foreclosure of lien upon 379 acres; and the other instituted on the 7th of January, 1893, seeking a judgment upon a note for

$2000, with interest, and foreclosure of liens upon 288 acres of said 379 acres. The suits were consolidated; and the plaintiff's cause rested upon the claim that on the 25th of September, 1885, the defendant R. M. Scripture executed and delivered to plaintiff his negotiable promissory note, payable June 1, 1890, in the sum of $2000 with interest from date at 10 per cent, etc., and at the same time to secure said note he and his wife, F. E. Scripture, executed to James B. Simpson, as trustee, a deed of trust upon 288 acres of land out of the T. Cheshire and H. Burnham surveys; that on the 29th day of January, 1887, the said R. M. Scripture executed and delivered to the plaintiff his promissory note, payable on the 1st day of December, 1891, in the sum of $5300 with interest from date at the rate of 10 per cent, etc.; and that at the same time the said R. M. Scripture and F. E. Scripture executed and delivered to James B. Simpson, as trustee, to secure the note, a deed of trust upon 379 acres of land—being the 288 acres of the T. Cheshire and H. Burnham surveys, and in addition thereto 91 acres out of the T. Cheshire, H. Burnham, J. B. Earhart, and M. B. Reynolds surveys. The plaintiff asked judgment against R. M. Scripture for the indebtedness, and foreclosure against all the defendants upon said property. The defendant R. M. Scripture and the minor children of F. E. Scripture, deceased, Blanche, Reginal, and Frances M., who had been made defendants to the suit, pleaded that 200 acres of the land upon which a foreclosure was sought (said land being described by metes and bounds) constituted at the time of the execution of the deed of trust their homestead, and that the plaintiff knew this fact; that they had continually resided in the county of Dallas, after the marriage of R. M. Scripture and F. E. Scripture, with the exception of a short time when they were absent in Denton County, Texas. The plaintiff in reply denied that these lands constituted at the time of the execution of the deeds of trust the homestead of F. E. Scripture, and alleged that at the time of the execution of the deeds of trust the said R. M. Scripture and wife did not reside in Dallas County, but did reside in the county of Denton, State of Texas; that they at said times had purchased property in the city of Denton, upon which they resided as their homestead, and at the time of the transaction herein involved, had no claim whatever to any homestead rights in the Dallas County lands; that they then and there, while the Dallas County lands were not occupied and while they so resided in Denton, Denton County, Texas, and for the purpose of securing the sums of money for which the notes were given and the deeds of trust were executed to induce the plaintiff to let them have the money, represented to the plaintiff that no part of the Dallas County lands constituted their homestead; that their homestead consisted of lands in the city and county of Denton, State of Texas; that the plaintiff believed these representations and relying thereon made the loans in good faith without any knowledge of the claim set up by the defendants herein; that there was nothing to indicate to the plaintiff or anyone else that any portion of the Dallas County lands constituted the home-

stead of the defendants; that the plaintiff would not have made the loans had it had any notice of such claim.

Defendants by their supplemental answer pleaded that J. B. Simpson was the general agent of the appellee in making the loans and taking the notes and deeds of trust, and prior to the time of the execution of the same knew that 200 acres of the land constituted the homestead of appellants, and made both loans, not upon the strength of any representation by R. M. Scripture and wife, but that such loans were based upon the value of the excess over the 200 acres, and that the said Simpson induced the said R. M. Scripture and wife to sign said written representation under the pretense that they were mere formalities, and that at the time he knew the same to be untrue and did not rely thereon. And to this the plaintiff replied (in addition to a denial of the same) that if its agent, James B. Simpson, at the time the loans were made had knowledge of the fact that any part of said lands constituted the homestead of R. M. Scripture and wife, then the transaction was a fraudulent scheme between the said James B. Simpson, its agent, and the said R. M. Scripture and wife to deprive it of its money, and that such knowledge, if it existed, on the part of said agent can not and did not in any way affect the plaintiff, etc.

Appellants filed an admission to the effect that appellee had a good cause of action, as set forth in its petition, except in so far as it might be defeated in whole or in part by the facts of the answer constituting a good defense which might be established on the trial. Upon the admission they were permitted to open and conclude the case, assuming the burden of proof in the establishment of the defensive facts. After hearing the evidence and argument the court peremptorily instructed a verdict for appellee, in accordance with which the jury returned a verdict for appellee upon which judgment was entered. From this judgment the appeal is prosecuted.

*Opinion.*—The only question raised by assignment is whether the court was justified in peremptorily instructing a verdict for the plaintiff as to the 200 acres claimed to be the homestead of the defendant.

There were issues of fact raised by the pleadings, and the correct determination of the question depends upon the state of the evidence adduced upon the trial. If the evidence was all one way or so conclusive that reasonable minds could not differ as to its effect, the judge had the right to instruct the verdict. Evidence which is merely sufficient to create a surmise or suspicion upon a particular issue raised by the pleadings does not require the submission of the issue to the jury. In the case of Ivey v. Bondies, 44 Southwestern Reporter, 916, we held that the evidence as a whole was of such conclusive nature that the court was justified in instructing a verdict. There was some evidence in that case which tended to support the defense of a parol sale of the land, but it was so thoroughly neutralized by other evidence in the form of letters written by Ivey to Bondies, showing that he occupied the land as the

agent of Bondies, that we held the evidence conclusive as to the title of plaintiffs. The correctness of our holding upon that point was presented to the Supreme Court upon application for writ of error, and such application was refused. It seems now to be the settled rule that if the evidence is so decidedly of one tendency as to leave no substantial basis upon which reasonable minds may differ as to the ultimate conclusion to be drawn from the evidence, the decision of the matter is for the judge, not for the jury.

Under this view, we will now consider whether the trial judge transcended the bounds of his authority by instructing a verdict for plaintiff in this case. It will be borne in mind that the plaintiff's cause of action was admitted as pleaded, and plaintiff was not required, therefore, to produce evidence. The burden to establish the issues to be considered was upon the defendants and the question is whether they produced any evidence upon which the jury might have rested a verdict in their favor.

1. It was shown that the 200 acres in controversy was at one time the homestead of the defendants, and that they lived upon it as such prior to the time when the two loans of money were made to them and the deeds of trust executed upon the property to secure such loans.

2. The defendants moved away from this property and took up their residence in another county, namely, the town of Denton, in Denton County, Texas, where they lived for about six years. Here they first lived upon a rented place; subsequently the husband purchased a residence place, and with his family occupied it as such. At first the husband went into his brother's store as a clerk upon a salary; subsequently he conducted a grocery business upon his own account. He voted there and did other acts indicative of bona fide citizenship.

3. While they thus resided in Denton, and after a residence there of four years, the two loans of money were procured. To obtain these loans the husband and wife represented, through statements made in affidavits, that the land in controversy was not their homestead; that their homestead was in Denton, and designated a particular lot in Denton which they had purchased as their homestead.

4. There was conflict in the evidence upon the point whether the defendants intended a mere temporary residence in Denton and the reoccupancy of the property in question as their homestead.

5. There was evidence tending to show that J. B. Simpson, who was the agent of appellee to make loans and who contracted these loans, knew that appellants had occupied the 200 acres as a homestead prior to their removal to Denton. This fact he never reported to the company, and it was wholly unknown to any other agent or officer of the company. There was evidence tending to show that said Simpson knew when he made the loans that appellants had left upon the premises in controversy some of their household and kitchen furniture, farming utensils, teams, wagons, etc., and recognized this as indicating an intention on their part to return to the property and reoccupy it as their homestead.

7. There was some evidence tending to show that according to valuations at the time of the loans the 179 acres in excess of the 200 acres claimed as the homestead which was also covered by the deeds of trust was of sufficient value to secure the two loans, but the great preponderance and weight of the evidence established that such excess of 179 acres was inadequate as security for the loans. There was evidence also that there was much competition in the loan business at that time at Dallas.

8. It was also testified by appellant Scripture that the attention of Simpson was directed to the value of this excess of 179 acres over the homestead, and that he stated that it was very valuable land, and that as he, Scripture, lived in Denton, the loan might be warranted and that he would see further and write to him, Scripture. After this the loans were made upon written application and the sworn representations heretofore set forth as to the homestead. J. B. Simpson had positive instructions from his principal, appellee, not to make a loan upon any property about which there was any question as to it being homestead. The loan company knew nothing of any homestead claim, aside from Simpson's knowledge; Simpson reported that the property was free from homestead claim and the truth of this report was fully relied upon by his principal in approving the loan.

Upon this state of the evidence, could the jury correctly have founded a verdict in favor of appellants?

Let it be fully conceded that it was shown that the homestead was not abandoned in intention, and that the agent knew of facts which indicated that they intended to return and reoccupy the property as the homestead. This knowledge would put him upon inquiry, and he would be chargeable with knowledge of all the facts which a prudent and faithful inquiry would develop. Before he made the loans in question he required R. M. Scripture and his wife to state under the solemnities of an oath whether this property was their homestead. They each swore that it was not, and further swore that their homestead was in Denton and consisted of a certain lot specifically described. The question of whether the homestead character still adhered to the property after they moved to Denton rested entirely in intention on their part, and they were the only persons who possessed absolute knowledge on that subject,—what were their intentions in the matter only they could certainly know. They could silence rumor, neutralize circumstances, and put to rest all doubt by disclosing that which had existence only in their own minds. To procure these loans, they made this disclosure in the most emphatic manner, and under circumstances of sanctity which ordinarily inspire reverence and fear and serve to elicit the truth. Who could dispute their sworn statements? No one possessed equal knowledge with them, and circumstances must yield their uncertain force to the absolute knowledge of the parties. Should they now be heard to say that they deliberately swore falsely, and that appellee's agent must have known it by force of the circumstances of which he had knowledge? Such a holding would tend to

promote and encourage fraud and perjury rather than the ends of justice, and the ordinary sense of fairness revolts at the proposition. Simpson swore that he knew nothing of their homestead claim to the property in question, that he relied upon the truth of their representations that it was not their homestead, and negotiated the loan upon the faith of such statements. We regard the evidence as absolutely conclusive upon this issue in favor of appellee.

Again, if the agent did know that the property was homestead, and against the positive instructions of his principal made the loans, concealing his knowledge from the principal in collusion with the borrower, the effect of such conduct would be a fraud upon the principal, and the principal would not be charged with his secret knowledge. Life Association v. Parham, 80 Texas, 518; Investment Co. v. Gauzer, 63 Fed. Rep., 647; Electric Co. v. Electric Co., 65 Fed. Rep., 343; Innerarity v. Bank, 139 Mass., 332; 1 Am. and Eng. Enc. of Law, 423; DeKay v. Water Co., 38 N. J. Eq., 158; Dillanay v. Bufler, 135 Mass., 479.

The contention of appellant that there is evidence sufficient to support the conclusions that the agent acted in good faith toward the principal, and made the loans knowing the 200 acres was homestead, but believed and relied upon the 179 acres in excess as being of sufficient value to secure the debt, can not be sustained. There is no one who testified to such a state of case, and there are no circumstances shown which would justify such a conclusion. The fact that his attention was called to the value of the excess, and that he stated that the land was valuable, and as Scripture then lived at Denton the loan might be warranted, would not in our opinion justify this conclusion. Simpson swore that this was not true, and that he did not know the property was claimed as homestead, and that he relied upon appellant's representations that it was not homestead in extending the loans to them. The circumstance mentioned is not inconsistent with his testimony, and the truth of his testimony on this point we regard as conclusively established by the record.

We do not think any reasonable, just mind could examine and analyze the evidence and reach the conclusions for which appellants contend there is foundation in the evidence.

There was an utter failure to establish the defensive facts alleged, and the court did right in directing a verdict.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.