**FIRST TEXAS JOINT STOCK LAND BANK OF HOUSTON et al. v. CHAPMAN et ux.**

No. 12615.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 6, 1932.

Rehearing Denied April 2, 1932.

Baker, Botts, Andrews & Wharton, of Houston, and C. T. Gettys, of Decatur, for appellants.

J. V. Patterson and H. E. Lobdell, both of Decatur, for appellees.

CONNER, C. J.

As finally presented by the pleadings in this case, the appellant First State Joint Stock Land Bank of Houston sought judgment upon a promissory note executed by J. L. Chapman for the sum of $5,900, on October 19, 1922, and to foreclose a trust deed lien upon 101 acres of land, described in the pleadings, situated in Wise county, which had been executed on the same date by J. L. Chapman and his wife, Lottie Chapman. Chapman and wife defended on the ground that the land had been used and occupied by them as their homestead for many years, including all times mentioned in the pleadings, and they prayed that the trust deed be canceled and the cloud cast thereby on their title be removed.

The Houston Bank answered by a general denial and specially, in substance, that the note for $5,900 and the trust deed given to secure the same had been executed in consideration of moneys advanced to Chapman with which to pay off and discharge two previous obligations and liens created by Chapman resting upon the lands in controversy. One of these previous liens was alleged to have been executed in October, 1917, and the other in October, 1918; that these liens had been discharged with the sums of money so advanced, and that the bank had become subrogated to the rights thereby created; that upon no date or time involved did the land in question constitute the homestead of Chapman and wife. The bank further pleaded, however, that, if mistaken in its contention that the lands did not constitute the homestead of Chapman and wife, at the time of the creation of the liens of 1917 and 1918, or if for any reason those liens were invalid, Chapman and wife were estopped to claim otherwise, in that prior to the time the bank advanced the sum of $5,900 Chapman and

wife executed an affidavit in which they swore that, at the time of the execution of the notes and deeds of trust of 1917 and 1918, the property involved was not their homestead, but, on the contrary, they were occupying a place in the city of Decatur as their homestead; that, if the statements made in the affidavit and application for the loan were untrue, as alleged by Chapman and wife, the bank, at the date of the closing of the loan of 1922, had no knowledge or notice of invalidity, if any, of the liens of 1917 and 1918, by reason of the homestead claim, or for any other reason; and that to permit Chapman and wife to take advantage of the falsity of their sworn representations upon which the bank relied would constitute a fraud on the bank and be inequitable, and the bank therefore prayed that it might have judgment on the amounts due upon the $5,900 note with a foreclosure of the trust deed lien.

Chapman and wife by supplemental petition alleged that he could not read, and that, if they executed the affidavit pleaded by the bank, they did not read or understand it, and that their signatures thereto were secured by fraud and misrepresentation on the part of S. A. Lillard, Jr., whom they alleged was acting as agent for the bank in the transaction, which was not deceived by any representation made by them. The bank denied these allegations, and alleged that the entire transaction had been closed by the Chapmans and their own agent selected by them, or by others whose interests were adverse to the interest of the bank.

The case came on for trial on December 3, 1930, and the court, after the introduction of the evidence, discharged the jury which had been impaneled, and rendered judgment in favor of the bank for the full amount of its indebtedness against J. L. Chapman and for a foreclosure of its asserted lien to the extent necessary to secure the sums advanced by the bank to pay off the indebtedness due on the obligation and trust deed executed in October, 1917, but for the moneys advanced to pay off and discharge the lien of October, 1918, denied the foreclosure of the bank's asserted lien. From this judgment the bank has duly prosecuted this appeal.

The following facts seem to be undisputed: The valid and binding effect of the Chapman obligation and trust deed, dated October 24, 1917, is not questioned. At the date of the trial, the amount due upon that obligation of Chapman's was found by the court to be $3,270.27, with interest thereon at the rate of 6 per cent., and to that extent, and that extent only, the prayer of appellant bank for judgment with a foreclosure of its trust deed on the lands involved was decreed, and to such decree no objection is urged in this court, and it must therefore be left undisturbed. The court held, however, that at the time of Mr. Chapman's obligation and the trust deed

of October 24, 1918, the lands involved constituted the homestead of Chapman and wife. At the date of the judgment, the amount due on the obligation of October, 1918, was an unpaid balance of $2,673.50, and to this extent the prayer of the bank was denied and the trust deed securing it set aside, and it is from this order the appeal has been prosecuted.

The lien of October 24, 1918, was evidenced by a note of Chapman's to the City National Bank of Decatur, Tex., secured by a trust deed covering the land in controversy upon which obligation at the time of the trial there was due, as stated, $2,673.50. J. Warren Lillard was appointed trustee in the trust deed. These instruments were duly recorded, and the sums so stated to be due thereon were paid to the Decatur bank by the Houston bank upon drafts of Chapman; the obligations having been transferred to the Houston bank.

Chapman's application was dated July 12, 1922. It was therein stated, among other things, that: "Applicant lives on this land. All the property offered as security for the loan applied for, and is claimed as homestead. Been in adverse and peaceful possession of the land twenty-two years."

Thereafter the Houston bank addressed a letter to Mr. Chapman, in which, after inquiries relating to the title, we find the following: "Please give us also full information with reference to the indebtedness existing upon the land and of the disposition to be made of it in the loan. In this connection we call to your attention that the property now appears as homestead. Give us full information as to the homestead at the time the liens, proposed to be paid by us, were created."

On page 71 of the statement of facts we find an affidavit to which J. L. Chapman acknowledged his signature, made before S. A. Lillard, Jr., a notary public, on the 4th day of October, 1922, in which he says that his homestead and the homestead of his family was "lots Nos. 2 and 3 out of block No. 26 in South Decatur Addition, being the land deeded to me by J. J. Sweet and wife and by Grace Traxler and husband. That this was our homestead until February 12, 1919, at which time we moved to our farm. That this was our homestead for more than three years prior to our moving to the farm."

On the 26th day of October, 1922, as appears in the statement of facts, J. L. Chapman and wife, Lottie Chapman, executed the following affidavit:

"The State of Texas, County of Wise:

"Before me, the undersigned authority, on this day personally appeared J. L. Chapman and wife, Lottie Chapman, known to me, who, after having been by me duly sworn deposed and said:

"Whereas they have applied to First Texas Joint Stock Land Bank of Houston for a loan

of $5,900.00 to be applied in renewal and extension of the amount due Reynolds Mortgage Company on the indebtedness described in and secured by two deeds of trust dated October 24, 1917, given by J. L. Chapman and wife, Lottie, to C. T. Burns, Trustee, for said Reynolds Mortgage Company, and recorded in Volume 35, on pages 222 and 225, respectively, of the Deed of Trust Records of Wise County, Texas, upon which there is now due the sum of $3,226.50, and also in renewal and extension of an interest of $2,672.50 of the indebtedness described in and secured by a Deed of Trust by J. L. Chapman and wife, Lottie, to J. W. Lillard, Trustee, for City National Bank of Decatur, Texas, dated October 24, 1918, and recorded in volume 38, on page 271, of the Deed of Trust records of Wise County, Texas, upon which indebtedness there is due a sum in excess of $2,672,50; therefore, for the purpose of inducing said First Texas Joint Stock Land Bank of Houston to make said loan, and for the further purpose of assuring said First Texas Joint Stock Land Bank that the Deed of Trust to be given by us to C. S. E. Holland, Trustee, to secure the payment of said loan will be a valid and subsisting lien on the land we represent that the indebtedness to be renewed and extended thereby is due and just and that the liens above referred to securing the payment thereof are valid and subsisting liens on the land described in said deeds of trust; that at the time said Deeds of Trust to C. T. Burns, Trustee, and to J. Warren Lillard, Trustee, above referred to, were executed by us the land described in said Deeds of Trust was neither used, occupied nor claimed by us as a homestead, and we had no intention of using, occupying or claiming said land as a homestead in the future but to the contrary we were on the dates of said Deeds of Trust using, occupying and claiming as our homestead certain property situated in the City of Decatur, Texas.

"[Signed] J. L. Chapman,
"Lottie Chapman.

"Sworn to and subscribed before me at Decatur, Texas, this 26th day of October, 1922.

"[Signed] M. W. Burch, Notary Public
in and for Wise County, Texas."

The application for the loan was forwarded to the Houston bank through its agent, C. S. E. Holland, who resided in Dallas, Tex. The managing officers of appellant bank, who passed on the loan in Houston, testified without contradiction that they had no knowledge or information to the effect that Chapman and wife were living on the land in question in 1918, but that on the contrary they fully trusted and believed in the representations that the land was not then the homestead of the Chapmans, as stated in the affidavits and deed of trust. It seems apparent that S. A. Lillard, Jr., and M. W. Burch arranged the proceedings, such as preparing the application, taking the affidavit, etc., in aid of the Decatur bank. S. A. Lillard, Jr., was vice president of that bank, and M. W. Burch was its attorney. We find no specific evidence that these particular individuals knew that Chapman and wife were in fact living on the land in controversy on October 18, 1918, when the note and trust deed to the Decatur bank was executed. At that time S. A. Lillard, Jr., was overseas with the American Army, but those obligations were presumably executed at the instigation, and for the benefit, of the Decatur bank by J. Warren Lillard, who was the managing officer of that bank at that time, and who did not testify upon the trial. The affidavit of Chapman and wife, hereinbefore copied, was taken out to the farm upon which they were living by S. A. Lillard, Jr., and M. W. Burch. Chapman testified that he could not read; his wife testified that she did not read the instrument, and that it was not read to her, and both testified that, had they known that therein statements had been made that the land upon which they had been living was not their homestead, in October, 1918, they would not have signed the affidavits. Mr. Burch, however, testified that:

"I remember of an occasion when I went out with S. A. Lillard, Jr., to where Mr. J. L. Chapman and his wife lived sometime in 1922 with some papers to be signed up by them. I went along and took the acknowledgments. I was a notary public at that time. I had with me on that occasion the Deed of Trust and the Affidavit; they were signed, sworn to and acknowledged before me by Mr. and Mrs. Chapman. The date of that is October 26, 1922. * * * I told him (J. L. Chapman) I came out to take his acknowledgment for the Deed of Trust and to procure his signature to this affidavit; I explained the nature of it. I told him he was procuring a loan on this land. I didn't read the affidavit to him; I explained the nature of it to him. I knew what was in the affidavit. Mr. Lillard brought the Deed of Trust and the affidavit to my office on the west side of the square here. He asked me to accompany him and take the acknowledgments. As a lawyer I understood the meaning and effect and the importance of the statements in the affidavit. I explained that to Mr. Chapman. I won't be certain whether Mr. Chapman signed the instruments there in the field. I explained to him it was a deed of trust on the land and the creation of a lien, I think, for $5,900.00, and that the affidavit—I don't think Mr. Chapman read the affidavit, but I explained the contents of it and the nature of the affidavit to him. Since I have thought about it, it was in 1922, a good while ago, my impression was he accompanied us to the house, but I don't believe now he did, but remained in the field. I explained to him all those things, with reference to the Deed of Trust and explained the affidavit. I told him it was an

affidavit showing at the time the loan was originally created, a note that had been given to the City National Bank, that he was not then using and occupying this particular land as a homestead, but lived in Decatur. This affidavit was showing those facts that he was then not living on this land and occupying it as a homestead.

"My recollection is a little bit hazy as to whether he signed them right there or whether he went to the house. My impression has been he accompanied us to the house, but I now don't believe he did. I think we went to the house after that and got Mrs. Chapman's signature. * * *

"We went to the house where Mrs. Chapman was. We found Mrs. Chapman at the house. I went into the room where she was and explained very carefully to Mrs. Chapman the deed of trust and the nature of the deed of trust and the contents and substance of the affidavit and told her and explained to her in detail. She didn't read the affidavit neither did she read the deed of trust. I explained to her the deed of trust was for a loan on the land and the nature and the amount of the loan.

"With reference to the affidavit I explained to Mrs. Chapman that it was an affidavit showing at the time of the execution it was not a deed of trust on the homestead to the City National Bank of Decatur and that they were living in Decatur and were not using and occupying the land described in the deed of trust as a homestead, and that their homestead at that time was in Decatur. Then, she signed up those papers and acknowledged them and swore to the affidavit."

 No brief has been filed in behalf of appellee, but it seems to have been suggested that the appellant Houston bank had record notice of the fact that the land in controversy in October, 1918, was occupied by Chapman and wife as their homestead. This suggestion grows out of the fact that in February, 1918, Chapman and wife sold the premises they were occupying in the city of Decatur, and at once moved to the land in question, as their home. The deed to the Decatur property was duly recorded, but, while it may have constituted notice to the Decatur City National Bank that the land in controversy was occupied at the time it took its note and mortgage, we do not think such effect can be given the record as against the appellant bank, for it is well settled under the authorities that a purchaser of land is not affected by the record of instruments other than those in the chain of title he acquires.

 It may also be suggested that S. A. Lillard, Jr., or M. W. Burch, or both, were agents of the appellant bank; that they knew, or ought to have known, the lands involved constituted the homestead of the Chapmans in October, 1918, but, as before indicated, we find no evidence of probative force which will authorize the conclusion that S. A. Lillard, Jr., or M. W. Burch was an agent of the appellant bank, authorized to bind it in any way whatever. On the contrary, we think it apparent from the evidence as a whole that those two parties were acting for the benefit of the City National Bank of Decatur and in aiding Chapman to secure the loan evidenced by the $5,900 note. Their knowledge, therefore, whatever it was, cannot be imputed to the appellant bank. Or, if it be said that those two persons, or either, was such agent of the appellant bank as to ordinarily affect it with their knowledge, and that they knew or ought to have known that the land involved was the homestead of the Chapmans in October, 1918, as appellant alleged, their acts in the matter constituted such fraud as will relieve the appellant bank from the burden of such agent's knowledge, if any, of the invalidity of the note and trust deed to the City National Bank of Decatur. The authorities are uniform to the effect that a principal is not affected by notice to an agent who is acting adversely to the interests of his principal, and either for his own benefit or for the benefit of a third party. The language of the court in the case of Scripture v. Scottish-American Mortgage Co., 20 Tex. Civ. App. 153, 49 S. W. 644, 646, in relation to this subject, is as follows: "Again, if the agent did know that the property was homestead, and, against the positive instructions of his principal, made the loans, on concealing his knowledge from the principal, in collusion with the borrower, the effect of such conduct would be a fraud upon the principal, and the principal would not be charged with his secret knowledge."

And in Pickett v. Dallas Trust & Savings Bank, 24 S.W.(2d) 354, 358, the Commission of Appeals said, among other things, that: "* * * If Fannin was not acting in good faith with his principal, the principal was not bound by his knowledge of the facts for the reason that Fannin thereby became a party to the fraud and the agent of the persons he collusively served."

See, also, Kauffman & Runge v. Robey, 60 Tex. 308, 48 Am. Rep. 264; Texas Loan Agency v. Taylor, 88 Tex. 47, 29 S. W. 1057; Teagarden v. R. B. Godley Lbr. Co., 105 Tex. 616, 154 S. W. 973.

██ Article 16, § 50, of our Constitution, specifically declares that: "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

Notwithstanding this emphatic language of the Constitution, it seems now to be the settled law of this state that the homestead of a family may be lost, not on the ground that a conveyance, mortgage, or lien covering the same is valid, but on the ground that the homesteader may estop himself or herself from claiming the benefits of the constitutional provisions. The adjudicated cases in which the courts have enforced against the homestead liens which were neither for purchase money nor for improvements contracted for in the manner provided in the Constitution fall within the following three classes: (1) When the owners, not actually occupying the property, or so using it that its status is dubious at the time the mortgage is executed, represent that it is not their homestead; (2) when the owners create a lien by entering into a simulated transaction which has all the outward appearance of a valid, unconditional sale, but which is in fact a mortgage; (3) when the owners represent that existing notes are valid mechanic's lien notes for improvements, secured by a mechanic's lien contract properly executed.

One of the latest decisions under the first class of cases above mentioned is Carstens v. Landrum (Tex. Com. App.) 17 S.W.(2d) 803, 804. Landrum and wife owned a 200-acre farm on which the family resided prior to 1917, but in that year the wife took six minor girls to San Antonio to find work; the father and his minor son remained on the premises. The mother and daughters resided in San Antonio on rented property. The deed of trust in question was executed on April 13, 1918, covering the 200-acre farm, and included a disclaimer of homestead and a representation that the homestead of the mortgagors was certain other property which they owned at the time and which was located on the Corpus Christi road. The court found that the mortgagors did not really intend to occupy the Corpus Christi road property as their homestead, but they moved there about one month after the deed of trust was executed and occupied that property until 1919, when they returned to the farm, where they remained until 1922. In ruling that they were estopped to set up a homestead claim to the 200-acre farm, the court said:

"The controlling question to be considered is whether the said recitals of the deed of trust raise an estoppel against Landrum and wife. It is no longer an open question in this state that, where the tangible facts respecting two places are such that the homestead character will attach to either, to the exclusion of the other, according as the husband and wife intend, a declaration by the spouses of their intentions in this respect may estop them from disputing the truth of the declaration. Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209.

"It becomes necessary, therefore, to consider the tangible facts relating to the Atascosa county farm and the Corpus Christi road property as those facts existed at the time the transaction occurred in which the deed of trust in question and the deed from Neal to Landrum were executed. Discarding from consideration the real intentions which Landrum and wife had in mind, it could not be said that the use and occupation of the farm were of such a nature as to show conclusively that the farm was in law and in fact their home when that transaction took place. Whether it was or not depended upon their real intentions which they could change at will, and which nobody could know but themselves. In the same transaction in which they declared an abandonment of the farm as a home, they acquired a new place, suitably improved, which they declared in effect was their home and was intended to be used as such. In view of the ambiguous circumstances under which the farm was being used and occupied by a part of the family, and of the fact that within a short time Mrs. Landrum and the girls moved to and resided upon the Corpus Christi road property, there can be no doubt that the latter place would be treated as having become the family home, and protected as such, at the very time of said transaction, if the real intentions of Landrum and his wife had corresponded to their declarations of intention as contained in the deed of trust. Gardner v. Douglass, 64 Tex. 76; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832. * * *

"We conclude that, under the facts as we have stated them, the declarations of Landrum and wife contained in the deed of trust, with respect to which of the two places was intended as their home, raise an estoppel against a denial of the truth of the declarations in so far as the deed of trust lien is concerned."

Hence, though the court found that as a matter of fact Landrum and wife never intended to abandon their homestead, and that consequently the mortgaged property was still their homestead, and therefore within the constitutional inhibition, nevertheless it was held that Landrum and wife were estopped to assert their plea of homestead which prevented them from setting up the defense that would have robbed the mortgage of its force and vitality as a valid lien.

A well-considered case to the same effect by the Supreme Court is Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209, 211, in which the opinion was written by Judge Williams. The action was one to collect a note and to foreclose a deed of trust securing it. The debtors owned two pieces of property in Dallas, one on Live Oak street and the other on Watt street. The former was the one mortgaged. The deed of trust recited that the property was not homestead. Contemporaneously

with its execution, the debtors made a written designation of the Watt street property as their homestead. The Court of Civil Appeals in 41 S. W. 132, found that the Live Oak street property was actually homestead, and that the representations concerning it in the deed of trust were false, but that the Watt street property was also being used in such a way as was calculated to produce the impression that it was homestead. In holding that under the circumstances the representations of the debtors estopped them from setting up their plea of homestead, the Supreme Court said:

"The other facts stated show that they represented the Watt street property to be their homestead, and that this was believed and acted on by plaintiffs' agents in lending the money upon the Live Oak street property. We are of the opinion that a question of estoppel arose from these facts. It may happen that families, the heads of which own more than one place suitable for a residence, will reside sometimes upon one and sometimes upon another, in such way that either serves to meet all the purposes of the home. No question of exemption or of power to mortgage or alienate may have ever arisen to make it necessary for them to select the place which will be claimed and held as the home. Upon this state of facts alone, no court could say, as matter of law, which one of the places thus used constitutes the homestead to which the constitutional protection is given; nor could persons dealing with the owner of the property. To determine the question thus arising, something more than mere use would have to appear. In such cases we see no reason why the husband and wife, if not the husband alone, would not have the absolute right, when occasion arises, to determine by selection the place to be held and protected as the homestead; nor why, after having selected and designated one of the places, and mortgaged another to a lender acting upon the faith of the selection, they should not be estopped, as to him, from claiming the mortgaged property as exempt. Under this view, the provisions of the mortgage and the statements in the other paper, called the 'Designation,' would amount to such an election—nothing having been previously done to impress definitely upon the Live Oak street property exclusively the homestead character,—and these facts thus present a question of estoppel. Or, if it were held that, the use of both places being sufficient for homestead purposes, the mere intention of the owners to hold the one or the other as their homestead would give it character as such, an estoppel might arise from their misrepresentation of their intent. The intention could only be definitely known to and disclosed by themselves; and, if facts had not transpired which certainly made one of the places their homestead under the

law, persons dealing with them would naturally rely and act upon their statements as to its existence in such way as to estop them from afterwards disputing the truth of the representations made. * * *

"Supposing the facts to be as stated, and that no others appeared to indicate to the lenders the untruth of the representations, there was no reason why the plain and unequivocal statement by the parties who alone knew the facts stated might not be implicitly relied on by persons so dealing with them. While it may be true that a person cannot assert an estoppel based upon a representation which, under the circumstances, he ought not to have believed and acted upon, it is, we think, equally true that where one states a fact which is or should be within his knowledge, intending that it be believed and acted on as true, he should not ordinarily be heard to say that the other party ought not to have believed him; there being nothing to show to such other the falsity of the representation. Nichols-Steuart v. Crosby, 87 Tex. 452, 29 S. W. 380; 7 Am. & Eng. Enc. Law, 16, and cases there cited."

The case of Scripture v. Scottish-Am. Mortgage Co., 20 Tex. Civ. App. 153, 49 S. W. 644, was one in which it was held that, though the property was in fact a homestead, and though the lien was of that character which was forbidden by the Constitution and declared by it to be invalid, the debtors had by their representations estopped themselves to assert their plea of homestead.

We might quote from other cases, but we think it will be sufficient to add that the following announce the same rule as those from which we have quoted, to wit: Calvin v. Neel (Tex. Civ. App.) 191 S. W. 791, writ of error denied; Johnson v. Masterson Irrigation Co. (Tex. Civ. App.) 217 S. W. 407, writ of error denied; Llewellyn v. First National Bank (Tex. Civ. App.) 265 S. W. 222; Leslie v. Elliott, 26 Tex. Civ. App. 578, 64 S. W. 1037, writ of error denied; Davidson v. Jefferson (Tex. Civ. App.) 68 S. W. 822.

The case before us we think distinguishable from that line of cases which hold that the actual possession of the homesteader will, as notice of his rights, control mere representations in a trust deed or other conveyance in writing, declaring the land occupied free of the homestead right. The trust deed executed in favor of appellant bank recited that the land described was Chapman's homestead, and the facts show that he was at that time in actual possession. But a good-faith advancement of money with which to discharge the note and trust deed of October, 1918, conferred upon the Houston bank the right by subrogation to enforce that right, in the absence of notice that the lands involved was occupied as a homestead upon the date of the execution of the 1918 note and

deed of trust. Sanger Bros. v. Ely & Walker Dry Goods Co. (Tex. Civ. App.) 207 S. W. 348, writ refused. So that it was not material to the Houston bank that Chapman and wife were occupying the land in question in July, 1922, the material question being, in order to acquire a valid right by subrogation: Was the land involved the homestead of Chapman and wife in 1918? Chapman's actual occupation and the recitation in the trust deed to the appellant bank that it was then occupied as a homestead by Chapman may have put the bank on inquiry as to Chapman's right, under rulings in cases such as Watkins v. Edwards, 23 Tex. 443; Hawley v. Bullock, 29 Tex. 223; Mainwarring v. Templeman, 51 Tex. 212; Wimberly v. Bailey, 58 Tex. 227. But in Eylar v. Eylar, 60 Tex. 315, it is said that the sole office which possession performs in the matter of notice is to put a person desiring to purchase upon inquiry, and it has no effect in determining what the inquiry shall be or of whom it shall be made. In that case the homesteader had executed a formal conveyance to his homestead which was duly recorded, and it was held that, while the homesteader's possession put the owner of the lien involved in that case upon inquiry, it was sufficient to examine the record.

In the case before us the Houston bank made a specific inquiry as to whether or not the premises in controversy were the homestead of Chapman and wife in October, 1918, when the obligation and trust deed to the Decatur bank had been executed. In answer to this inquiry, not only Chapman, but Chapman and wife, in most solemn form represented the fact to be that in 1918 it was not their homestead. It cannot be assumed that persons other than Chapman and wife would know more certainly than they whether or not they were occupying the land as their homestead in October, 1918. Appellees in their pleadings attempted to show that they had not intended to state, as they did do, that the premises was not their homestead in 1918, but in Guaranty Bond State Bank v. Kelley (Tex. Com. App.) 13 S.W.(2d) 69, 71, it is said that fraud which will estop a married woman is not necessarily intentional fraud, but rather an intentional affirmative act of hers, which operates as a legal fraud, whether so intended or not. So where, as is the case shown here, a bank in good faith, in answer to such inquiry, has been assured by the solemn declarations of persons who must be presumed to best know that the land in controversy was free from homestead claim upon the date of the conveyances under which the bank is claiming, such inquiry and assurances must be held to warrant the bank's acting upon the representations made as being true. To hold otherwise would be to support a legal fraud, even though the person so falsely representing the true state of affairs may be a married woman. See Guaranty Bond State Bank v. Kelley, supra. It is there said, in an opinion by Mr. Justice Speer, that: "The principle is settled in Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900, wherein it was held that one who innocently had made false representations inducing another to act would not be heard to say that such other should have pursued the inquiry by the means at hand to ascertain the falsity of the representations."

Without further discussion, we conclude that the undisputed evidence shows that the appellees, Chapman and wife, are estopped from claiming the land in controversy was their homestead in October 1918, and the judgment below to this extent will accordingly be reversed and here rendered in favor of appellant, in harmony with such conclusion.