## DALLAS JOINT STOCK LAND BANK v. GORE et al.

### No. 5016.

Court of Civil Appeals of Texas. Texarkana.

Dec. 10, 1936.

Rehearing Denied Jan. 7, 1937.

Renfro, McCombs & Kilgore, of Dallas, and Morgan & Morgan, of Greenville, for appellant.

Neyland & Neyland and H. L. Carpenter, all of Greenville, for appellees.

HALL, Justice.

This suit was brought in the district court of Hunt county by J. W. A. Gore and wife, Mary Gore, on May 31, 1932, against appellant for an injunction to prevent the sale of certain land under a deed of trust to satisfy an indebtedness of $15,000 due appellant by appellees, under the claim that the land sought to be sold was appellees' homestead. Appellant answered this suit and filed a cross-action for the amount due on its note and for foreclosure of its deed of trust lien securing same. Appellees answered this cross-action alleging in detail that the land covered by the deed of trust was, on the date of its execution and for many years prior thereto, their homestead and was their homestead at the time of the trial. Appellees further alleged that certain agents of appellant knew of the homestead character of the land in controversy by virtue of their having been on the premises at various times and especially at the time the land was appraised preliminary to securing the loan on same, to which the deed of trust sought to be foreclosed is referable. Appellant answered this contention by alleging that appellees were estopped from claiming the land in controversy as their homestead for the reason that they had made a homestead designation before the loan was approved which set apart land other than that now claimed as their homestead, and, further, that J. W. A. Gore represented to appellant that the prior liens existing on the land now claimed as a homestead, and which the loan in controversy was designed to liquidate, were valid and subsisting liens on the land in controversy; that appellant relied upon the statements and representations made to it by appellees, Gore and wife, and made the loan to them. J. W. A. Gore died before the trial and his wife, Mary Gore, was continued as plaintiff, and L. J. Gore, a son of J. W. A. Gore by a former marriage, intervened in the suit as plaintiff. The injunction was granted by the trial court as prayed for by appellees. At the instance of appellant the trial court appointed a receiver to take charge of the land in controversy during the pendency of the suit in the lower court and the appellate court.

A trial was had to a jury upon special issues, some of which were answered favorably to appellees, and some favorably to appellant. Based upon the favorable answers of the jury to it, and notwithstanding the jury's unfavorable answers, appellant filed its motion for judgment, which was not granted. The trial court, presumably upon its own motion, entered judgment for appellant for the principal, interest, and attorney's fees due on two vendor's lien notes secured by lien on 62½ acres of land, a part of the claimed homestead, and for the principal, interest, and attorney's fees due on a note executed before the marriage of J. W. A. Gore and Mary Gore secured

by a deed of trust lien on fifty acres of land, a part of the claimed homestead. The indebtedness secured by the two liens foreclosed by the court in his judgment was part of the $15,000 claimed by appellant as evidenced by its note and deed of trust, and for the whole amount of which it sought judgment and foreclosure. Both appellant and appellees excepted to this judgment, but only appellant has prosecuted its appeal to this court.

The note sued on herein and the deed of trust securing it was a part of a $20,000 loan secured by a deed of trust covering the property in controversy executed on September 15, 1925, by appellees in favor of appellant. The money obtained from this loan was used to pay off certain debts owing by appellees to other parties which were also secured by deeds of trust and the deed of trust securing the $20,000 advanced by appellant contained a subrogation agreement. At the time of making the loans prior to the one here in controversy, in fact, from 1910 to the trial of this case in the court below, the land involved herein was used by appellees as their homestead and at the time the prior loans were made and the deeds of trust securing them were executed there was recorded in the county clerk's office in the county where the land was located a homestead designation covering the land here in controversy.

On September 5, 1925, J. W. A. Gore made application to appellant for a loan to be consummated by September 15, 1925, in which he set out the indebtedness owing by him together with the liens securing same. In this list appears the debts liquidated by the loan here in controversy and the lien securing same, and in the same application J. W. A. Gore represents that 28 acres of the land covered by the prior liens, to which appellant was to be subrogated, was a portion of his homestead. On September 18, 1925, and before the money evidenced by the $20,000 note was ordered paid by the attorney representing appellant to the holders of the prior liens, J. W. A. Gore and wife made and executed the following homestead designation:

"State of Texas   ⎫ Know All Men by
"County of Fannin ⎭ These Presents:

"That we, J. W. A. Gore and Mary Gore, of said County and State, do by these presents hereby designated and set apart as our homestead the following described land with the improvements thereon, to-wit:

(Here follows a description of the several tracts of land aggregating 200 acres and which includes 28 acres upon which is located the mansion house and several outhouses and garage appurtenant thereto).

"Said above four tracts of land contain 200 acres of land. We hereby declare that we are residing upon, using, occupying and enjoying the said land, with the improvements thereon, as our homestead, *and that our homestead does not embrace any other land.* (Italics ours.)

"Witness our hands this 15th day of September, A. D. 1925.

"[Signed]   J. W. A. Gore,
            "Mary Gore."

This instrument was duly acknowledged before a notary public in and for Fannin county, Tex. On or about April 4, 1927, J. W. A. Gore and wife, Mary Gore, together with their attorney, M. B. Harrell, of Greenville, Tex., went to the office of appellant's attorney, Renfro, in Dallas and made request that the $20,000 note and deed of trust lien executed by them on September 15, 1925, be divided so that there would be $15,000 against 200 acres of land described in the deed of trust securing the original $20,000 note executed by them in September, 1925, and $5,000 against the remaining 62 acres described in the September, 1925, deed of trust lien. While Gore and wife and their attorney were in the office of appellant's attorney, Renfro, they executed the following instrument:

"State of Texas   ⎫
"County of Hunt   ⎭

"Whereas, the undersigned, J. W. A. Gore and wife, Mary Gore, being indebted to the Dallas Joint Stock Land Bank of Dallas for the balance due on an original amortized loan in the sum of $20,000.00, evidenced by a note for that amount, dated September 15, 1925, and secured by a deed of trust on 262 acres of land owned by us in Hunt and Fannin Counties, Texas, now desire to divide said loan so that there will be $15,000.00 due on our present homestead of 200 acres, and that the remainder thereof will be secured by the remaining 62 acres of the security for the original $20,000.00 loan, and, in order to induce the Bank to make such division, hereby declare that at the time said $20,000.00 loan was made, and that at the time said loan was closed the deed of trust securing same was a valid and subsisting lien against each and every part of said 262 acres of land; and we further declare that The Dallas Joint Stock Land

Bank and its agents and employees had no knowledge of any fact to the contrary. We further admit and declare that all statements and information furnished by us at that time to the Dallas Joint Stock Land Bank, its agents and employees, relative to our homestead as it then existed, estopped us from now declaring, so far as the Dallas Joint Stock Land Bank is concerned, that our homestead consisted at that time of property other than that set out and described in the homestead designation referred to as being filed for record in Fannin County, Texas, on October 3rd, 1925.

"And we further admit that we have come from our home to Dallas, Texas, and made these statements at this time for the purpose of inducing said Bank to divide said loan and have made such request that we may save our home from a foreclosure.

"And we further declare that all the statements herein made, while dictated by C. C. Renfro, Attorney for the Bank, were concurred in by us and our Attorney, M. B. Harrell, who was present during all the time that such statements were made and has witnessed same at our request.

"We further declare that we have read over these statements and fully understand the force and effect thereof, and are fully cognizant of its meaning and the effect thereof.

"Witness:       J. W. A. Gore
  "M. B. Harrell      Mary E. Gore.

"Subscribed and sworn to before me by said J. W. A. Gore and wife, Mary Gore, this the 4th day of April, A. D. 1927.

"Mary Stovall,
"Notary Public, Dallas County, Texas."

In response to the special issues submitted to them by the trial court the jury found that:

"1. The 200 acres of land in controversy was the homestead of Gore and wife February 10, 1915, when the Creager loan was closed.

"2. The land in controversy was the homestead of Gore and wife October 15, 1920, when the State National Bank loan was closed.

"3. The land in controversy was the homestead of Gore and wife June 8, 1922, when the San Antonio Bank loan was closed.

"4. The land in controversy was the homestead of Gore and wife September 15, 1925, when the $20,000 Dallas Joint Stock Land Bank loan was closed.

"5. The land in controversy was the homestead of Gore and wife April 1, 1927, when the $20,000 loan then held by the Dallas Joint Stock Land Bank was divided.

"7. That on February 10, 1915, A. Y. Creager Company, its agents or employees, knew the land in controversy was used, occupied and claimed by Gore and wife as their homestead.

"8. On April 15, 1920, State National Bank, its agents or employees, knew the land in controversy was used, occupied and claimed by Gore and wife as their homestead.

"9. On June 8, 1922, the San Antonio Bank, its agents or employees, knew the land in controversy was used, occupied and claimed by Gore and wife as their homestead.

"10. On September 15, 1925, when the $20,000 loan was closed, the Dallas Joint Stock Land Bank of Dallas, its agents or employees, knew the land in controversy was used, occupied and claimed by Gore and wife as their homestead.

"11. On April 1, 1927, when the $20,000 loan was divided, the Dallas Joint Stock Land Bank of Dallas, its agents, or employees, knew the land in controversy was used, occupied and claimed by Gore and wife as their homestead.

"17. The Gores signed their homestead designation knowing same did not contain a description of the 200 acres of land in controversy."

In response to issues submitted at the request of the defendant the jury found:

"(a) At the time C. C. Renfro, as attorney for the Dallas Joint Stock Land Bank of Dallas, approved the payment of the proceeds of the loan for $20,000 to the San Antonio Bank the State National Bank of Honey Grove, he did not know of any defect in the lien securing the note payable to the State National Bank.

"(b) At the time C. C. Renfro, as attorney for the Dallas Joint Stock Land Bank of Dallas, approved the payment of the proceeds of the loan for $20,000 to the San Antonio Joint Stock Land Bank and the State National Bank, he did not know of any defect in the lien securing the note payable to the San Antonio Bank.

"(c) At the time C. C. Renfro approved the payment of the proceeds of the loan for $20,000 to the San Antonio Bank and the State National Bank, he believed that

400

the notes so paid were secured by valid liens against the land in controversy.

"(d) C. C. Renfro, attorney for the Dallas Joint Stock Land Bank, believed the representations made by Gore at the time said Renfro approved the payment of the proceeds of said loan for $20,000 to the San Antonio Bank and State National Bank.

"(e) C. C. Renfro, as attorney for the Dallas Joint Stock Land Bank of Dallas, at the time he approved the payment of the proceeds of the loan for $20,000 to the San Antonio Bank and the State National Bank relied upon the representations made by Gore as to what land constituted his homestead.

"(f) At the time C. C. Renfro approved the payment of the proceeds of the $20,000 loan to the San Antonio Bank and the State National Bank, he believed Gore had selected as his homestead the 200 acres of land described in the designation dated September 18, 1925; and

"(g) That at the time C. C. Renfro approved the payment of the proceeds of the $20,000 loan to the San Antonio Joint Stock Land Bank and the State National Bank of Honey Grove, he relied upon the homestead designation made by Gore September 18, 1925."

On September 18, 1925, the date on which the $20,000 note and deed of trust securing it were executed, appellees owned over 700 acres of land in Hunt and in Fannin counties.

The paramount question in this case, in our opinion, is one of estoppel. Did the representations of J. W. A. Gore, in his application to the appellant for the loan in question, to the effect that the prior liens to which appellant was to be subrogated were valid subsisting liens on the land in controversy and that only 28 acres of which was a part of his homestead, together with the homestead designation executed by both J. W. A. Gore and his wife, Mary Gore, and furnished to the attorney of appellant in which none of the land now claimed as the homestead was included, estop appellees from setting up the invalidity of the indebtedness and the deed of trust lien in question? "Estoppel," as defined by Chief Justice Phillips in Davis v. Allison, 109 Tex. 440, 211 S.W. 980, 984, "is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties

to the deception will not, in the interest of justice, be heard to deny. But one entitled to its protection must have been misled." In Cravens v. Booth, 8 Tex. 243, 58 Am.Dec. 112, Justice Wheeler says: "It is a well settled principle of the law, from the influence of which not even married women are exempted, that 'admissions which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced.' 'The party is estopped, on grounds of public policy and good faith, from repudiating his own representations.' (1 Greenl.Ev., Sec. 207.) 'It makes no difference, in the operation of this rule, whether the thing admitted was true or false —it being the fact that it has been acted upon, that renders it conclusive.' " In Guaranty Bond State Bank v. Kelley (Tex.Com. App.) 13 S.W.(2d) 69, 71, in discussing the rules in cases of this character relating to estoppel of a married woman it is said: "It was suggested in the arguments that Mrs. Kelley could not be estopped by anything short of an actual fraud affirmatively committed by her, and it is argued that the fraud of the husband, who consummated the deal with the bank, could not be imputed to her. The principles thus contended for are sound; but that fraud which will estop a married woman is not necessarily intentional fraud, but rather any intentional affirmative act of hers which operates as a legal fraud, whether so intended or not, will estop her. Here Mrs. Kelley contributed in an active, affirmative way, to the perpetration of a legal fraud. Her intentions may have been, and no doubt were, perfectly harmless and with no actual purpose to wrong any one. But in law her conduct amounted to an affirmative representation that she and her husband had, in good faith, conveyed the homestead and reserved the lien thus assigned to the bank. To permit her now to plead the invalidity of the transaction would be to permit a legal fraud. Having actual notice of the execution of the deed retaining the lien, the measure of plaintiff in error's diligence was complete, and it was under no obligation to make further inquiry of defendants in error. It is ill-becoming defendants in error to insist that the bank, to whom they have thus represented that a sale of their home has been made, should make further inquiry of them or either of them if the transaction had been in good faith. The bank had a right to rely upon the truth of the facts thus represented to it. The principle

is settled in Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 132 Am.St.Rep. 900, wherein it was held that one who innocently had made false representations inducing another to act would not be heard to say that such other should have pursued the inquiry by the means at hand to ascertain the falsity of the representations." To the same effect are Dallas Bldg. & Loan Ass'n v. Patterson (Tex.Civ.App.) 48 S.W.(2d) 657, writ refused; First Texas Joint Stock Land Bank of Houston v. Chapman (Tex. Civ.App.) 48 S.W.(2d) 651, writ dismissed, and cases there cited; Scripture v. Scottish-American Mortg. Co., 20 Tex.Civ. App. 153, 49 S.W. 644, writ refused; Carstens v. Landrum (Tex.Com.App.) 17 S.W. (2d) 803; Ackerson v. Farm & Home Savings & Loan Ass'n of Mo. (Tex.Civ.App.) 77 S.W.(2d) 559, writ refused.

The application for the loan signed by J. W. A. Gore could have been furnished the appellant for but one purpose, and that was to enable it to determine the advisability of making the loan and the legality of same. It must have been apparent to J. W. A. Gore that the appellant would rely on all the statements made by him in his application, and the same is true with respect to the homestead designation executed by Gore and wife on September 18, 1925, as required by attorney of appellant before the money evidenced by the note and deed of trust were paid to liquidate the prior debts of appellees. Appellant had the right, in the exercise of good business judgment, to require of appellees the application for the loan and the homestead designation. It also had the right to rely on the truthfulness of the statements contained in each. That the attorney representing appellant did reply, and permitted the payment of $20,000, on the application for the loan made by J. W. A. Gore and the homestead designation made by him and his wife, was not denied. True, the contention is made that J. W. A. Gore could not read, but the record reveals that he could sign his name and both the application for the loan and the homestead designation of him and his wife bore his signature when this loan was passed upon by attorney representing appellant. Also, it is contended that Mrs. Mary Gore was not given an opportunity to read the homestead designation, nor was same explained to her before she signed and acknowledged it. However, it nowhere appears that the attorney for appellant had any knowledge of this fact. The authorities cited above, in our opinion, establish the rule in this state to be that where a husband and wife in their homestead designation make representations to a party with respect to which of certain lands comprise their homestead, and said party, in good faith and without notice of the untruthfulness of said statements acts upon them to his damage, the husband and wife will be estopped to deny the truth of such representations so made. The acts of appellees in making the application for the $20,000 loan and their homestead designation were affirmative in nature and deliberately made. The record in this case establishes conclusively that the homestead designation of Gore and wife described lands not included in the deed of trust lien involved herein; that the main dwelling house occupied by Gore and wife as a residence and the outhouses used in connection therewith, were located on a part of the land designated as their homestead; that J. W. A. Gore represented in effect in his application to appellant for a loan that the prior loans on the property which the loan here involved were designed to liquidate and the liens securing them were valid and subsisting; that these representations were made to appellant for the express purpose of inducing it to make the $20,000 loan, and that appellant relied upon said representations and made the loan in controversy. Furthermore, the jury found in answer to special issues submitted to it, that Gore and wife signed the homestead designation knowing it did not contain the 200 acres now claimed by them as their homestead. Therefore, it is our opinion that appellees are estopped to assert the invalidity of the deed of trust lien sought to be foreclosed on the land in controversy because of its homestead character, unless it be shown that an agent or agents of appellant, at or before the date the loan was made and the deed of trust lien securing it fixed, had notice of the homestead character of the property.

The appellees contend that the appraisers and one Sweeney who went to their, appellees', home before the loan here in controversy was made and appraised the land and improvements upon which the deed of trust lien was later fixed, were informed by appellees that said land constituted their homestead. It was further contended that the appraisers and Sweeney were the agents of appellant and that notice to them was notice to appellant. No serious contention was made in the court below

that C. C. Renfro, attorney for appellant, had any notice of the homestead character of the land in question. Moreover, the jury found that he did not have notice of such fact. It is the settled rule in this state that "the person who alleges it [agency] has the burden of proving it by a preponderance of the evidence." Winter v. Morgan & Williams (Tex.Civ.App.) 256 S.W. 342, 344; Tarver, Steele & Co. v. Pendleton Gin Co. (Tex.Civ.App.) 25 S.W. (2d) 156; West Lumber Co. v. Nash (Tex. Civ.App.) 243 S.W. 704; Texas State Mutual Life Ins. Co. v. Farmer (Tex.Civ. App.) 83 S.W.(2d) 411, writ dismissed. The law never presumes agency. Tarver, Steele & Co. v. Pendleton Gin Co., supra. There is testimony in the record that Gay, Roots, and Sweeney were present at the home of appellees on the occasion of the appraisal of the land and had pointed out to them by Gore and wife the land which constituted their homestead, and which corresponds to the land now claimed by appellees as their homestead. It is through these men, alleged to be agents of appellant, that appellees seek to visit notice to appellant of the homestead character of the land in controversy. The evidence, in our opinion, falls far short of establishing the relation of agency between Gay, Roots, and appellant, but, to the contrary, shows that they (Gay and Roots) at the time of the appraisal were employed by the Treasury Department of the federal government as land appraisers and assigned to the several joint stock land banks in this state. The record fails to show that appellant had anything to do with their employment, other than paying to them for each appraisal the amount collected for that purpose from the borrower. With respect to the status of Sweeney the evidence was conflicting, so the question of whether he was an agent for appellant on or before the date of the loan, was one of fact to be determined by the jury. No issue relating to Sweeney's agency was submitted to the jury by the court, nor was any requested by appellees. No exception was reserved by appellees to the charge of the court on account of his failure to submit an issue with respect to Sweeney's agency. The question of Sweeney's agency being a main or independent ground of defense of appellees to the foreclosure proceedings, a failure to have same submitted to the jury resulted in a waiver of such defense and it can not now be insisted upon. And the finding of the jury that the agents of appellant had knowledge that the land in controversy was the homestead of appellees, on the date the $20,000 note and the deed of trust lien were executed, was immaterial and should have been disregarded by the trial court. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Bulin v. Smith (Tex.Com.App.) 1 S.W. (2d) 591; Williams v. Daniel (Tex.Civ. App.) 30 S.W.(2d) 711; Turner v. Cochran (Tex.Civ.App.) 57 S.W.(2d) 305. Thus it will be seen that the defense of notice to the agents of appellant is not available to appellees, and, as said before, they are estopped to assert the invalidity of the deed of trust lien sought to be foreclosed against their homestead. It follows, then, that the motion of appellant for judgment non obstante veredicto should have been granted by the trial court.

Therefore, the judgment of the district court is reversed in so far as it denies appellant a judgment for the full amount of its note and a foreclosure of its deed of trust lien securing same, and is here rendered for the amount prayed for in appellant's amended petition, together with a foreclosure of its deed of trust lien on the land described in said amended petition.